BERRY *v*. BRUCE.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MOTION TO DISMISS.

In suit for injunction and accounting by pastor and officers of church, whether or not an order requiring defendants to call a meeting for purpose of considering matter of removal of pastor was a final and appealable order is not involved on appeal from such order where motion to dismiss an appeal from such order has been denied.

2. RELIGIOUS SOCIETIES—JUDICIAL INTERFERENCE IN ECCLESIASTICAL AFFAIRS IMPROPER.

Judicial interference in the purely ecclesiastical affairs of religious organizations is improper.

3. SAME—COURTS—PROPERTY RIGHTS.

In church disputes, courts are concerned with property rights only, and those rights may be protected by court order if occasion requires.

4. SAME—JUDICIAL INTERFERENCE—ECCLESIASTICAL MATTERS—REMOVAL OF PASTOR.

In church dispute wherein plaintiffs sought injunction against defendants from disposing of church assets, interfering with rights of members and for an accounting, trial court's order requiring defendant pastor and others to hold a meeting of the members of a church which had lost its corporate charter, and consider matter of preferring charges against the pastor and in case there is determination he should be removed, that an advisory council be selected to consider the charges, *held*, an improper judicial interference with the internal management of the church in ecclesiastical matters.

5. COURTS—JURISDICTION OF SUBJECT MATTER—CONSENT.

Parties, by consent or conduct, cannot give the court jurisdiction over the subject matter where it otherwise would have none.

6. COSTS—JUDICIAL INTERFERENCE WITH ECCLESIASTICAL MATTERS OF CHURCH.

On reversal of an order which constituted an improper judicial interference with ecclesiastical matters of a church and remand of case for further proceedings consistent with opinion, no costs are allowed.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 9, 1947. (Docket No. 58, Calendar No. 43,543.) Decided April 17, 1947.

Bill by Chester Berry and others against J. Herbert Bruce and others for an accounting and injunction. Cross bill by defendants against plaintiffs for an injunction restraining disorderly conduct and interference with church affairs. Order entered after hearing on show cause order which required the calling of a business meeting. Defendants appeal. Reversed and remanded for further proceedings.

*Ralph E. Helper* and *John G. Balose,* for plaintiffs.

*Edward N. Barnard,* for defendants.

CARR, C. J. This suit was started March 11, 1946, for the purpose of obtaining equitable relief by way of an injunction and an accounting. The defendant Bruce was the pastor of the Olivet Missionary Baptist Church, located in the city of Detroit, and the other defendants were officials of the church. Plaintiffs alleged in their bill of complaint that they were members of said church; that it had formerly existed as a corporation; that, through the carelessness and negligence of the defendants, the corporate charter had been lost on August 31, 1944, because of the failure to file an annual report; that the defendants had

failed to conduct the affairs of the church in accordance with the rules and regulations by which it was governed; that they had allowed the church property to become badly in need of repair; that the members of the church were denied their rights and privileges as such; and that defendants had failed to account for moneys that had been collected by them. Plaintiffs asked that defendants be enjoined, temporarily and permanently, from selling, assigning, mortgaging or otherwise disposing of any of the assets of the church, and from interfering with plaintiffs or other members of the church in the performance of their rights and duties as members. An accounting was also prayed.

On the filing of the bill of complaint an order issued requiring defendants to show cause why an injunction should not be granted in accordance with the prayer of the bill. A provision was inserted in said order restraining defendants from encumbering or disposing of any of the property in question, and from interfering with plaintiffs or other members of the church in the exercise of their rights and duties as such.

By answer to the bill of complaint, defendants denied the charges of misconduct made against them and further denied plaintiffs' right to relief. They admitted that the corporate charter had been lost, as alleged in the bill of complaint, denying, however, that such loss was the result of negligence or carelessness on the part of defendants. The answer alleged in this regard that it is a matter of common practice among certain churches not to continue at all times a corporate form of organization, and that the membership of the church had tacitly consented to the carrying on of religious services as an unincorporated association. By amendment to the answer, subsequently filed, defendants further alleged

that the Olivet Missionary Baptist Church had been conducted in accordance with its constitution and bylaws, and also in accordance with "The New Directory for Baptist Churches by Edward T. Hiscox." The parties seem to be in accord that the government of spiritual matters within the church is prescribed by the Hiscox manual.

Defendants also filed a cross bill, charging in substance that the plaintiffs and cross-defendants had conspired together for the purpose of unlawfully usurping the functions of the church, and that, in the attempt to carry out such purpose, plaintiffs and cross-defendants by indulging in improper and disorderly conduct had interfered with the holding of church meetings. Defendants and cross-plaintiffs asked for injunctive relief restraining such alleged conduct on the part of plaintiffs and cross-defendants. In accordance with such prayer an order was issued containing a temporary restraining order of the character sought, and further requiring plaintiffs and cross-defendants to show cause why a temporary injunction should not issue as prayed in the cross bill.

The orders to show cause, issued on the bill of complaint and on the cross bill, were brought on for hearing before the court on March 28, 1946. On April 24th, following, the court made an order requiring the defendant Bruce to call a special meeting of the membership of the church, to be held the evening of May 6th, such meeting to be presided over by the pastor, defendant Bruce, until the meeting reached the consideration of the question of removing the pastor. The order further directed that such meeting should be open only to members of the congregation of the church holding regular membership cards, or entitled to hold such at the time of the commencement of the suit on March 11,

1946; and that in all particulars the business to be considered at the meeting should be conducted in accordance with the constitution and bylaws of the church and the Hiscox manual. The order further provided that the membership of the church might consider the question of removing the pastor and that on the consideration of such question the pastor should retire as presiding officer, his place being taken by a chairman elected by the members present. Provisions were also inserted in the order enjoining plaintiffs and cross-defendants, and also defendants and cross-plaintiffs, from interfering with the meeting or creating any disturbance in connection with it, and from conveying or disposing of any of the church property. Except as covered by the provisions of the order the petitions for temporary injunctions presented by the parties to the case were denied.

In accordance with the direction of the court, as set forth in the order of April 24th, a church meeting was held on May 6, 1946. The record indicates that some dissension occurred at this meeting, and that action was taken by those present and participating in effect refusing to prefer charges against the pastor for the purpose of bringing about his removal. Plaintiffs and cross-defendants, asserting that the court's order had not been complied with in conducting the meeting, filed a petition, supported by affidavits, asking that defendants and cross-plaintiffs be adjudged guilty of contempt of court and punished accordingly. It was claimed specifically that a number of members of the church who were entitled to participate in the meeting had been wrongfully excluded, and that defendant Bruce had improperly refused to accept as chairman of the meeting a person proposed for that position. A hearing was had on said petition, testimony being

presented at some length. At the conclusion of the proofs the trial court determined that defendants and cross-plaintiffs had not been guilty of wilful contempt, but that the order, pursuant to which the meeting was held, had not been followed because of a misunderstanding as to its construction and intent. It is a fair inference that there were some differences of opinion as to the amount of weekly payments required to be made by members of the church in order to maintain themselves in good standing as such. Thereupon the court, under date of June 4, 1946, entered a further order dismissing the motion to punish defendants and cross-plaintiffs for contempt of court and directing the holding of another meeting. The specific provisions with reference thereto are as follows:

"II. It is further ordered that the pastor of the said Olivet Missionary Baptist Church, J. Herbert Bruce, shall call a meeting to be held on the 10th day of June, 1946, and that said meeting be held at the Olivet Missionary Baptist Church at 554 Winder street, city of Detroit, county of Wayne and State of Michigan, and that said meeting be held in accordance with the rules and regulations of Hiscox's Baptist Manual and under the constitution and by-laws of the Olivet Missionary Baptist Church, and that all members who possess membership cards in the Olivet Missionary Baptist Church as of March 11, 1946, when this suit was commenced, be permitted to attend this meeting and take part in said meeting, and further they shall be permitted to vote and in all respects to participate in the said meeting as full fledged members of the said Olivet Missionary Baptist Church;

"It is further ordered that persons not having possessed membership cards of the Olivet Missionary Baptist Church as of March 11, 1946, and persons not members of the Olivet Missionary Baptist

Church shall not be permitted to attend said meeting or enter the said church or the premises where the said meeting shall be conducted;

"III.   It is further ordered by this Honorable Court that the pastor, J. Herbert Bruce, shall call the meeting to order and shall open the meeting with the usual prayer of the said Olivet Missionary Baptist Church and shall thereupon leave the chair and declare the said meeting open for the election of a member of the said Olivet Missionary Baptist Church to preside at the said meeting, and that the said pastor, J. Herbert Bruce shall not take any further part in or in any way interfere with the conduct of the said meeting;

"IV.   That at the said meeting to be held on the 10th day of June, 1946, the said Olivet Missionary Baptist Church shall consider and shall prefer charges in accordance with Hiscox's Baptist Manual, against the said J. Herbert Bruce, pastor of the said Olivet Missionary Baptist Church, and the said church, in accordance with Hiscox's Baptist Manual, shall consider the removal of the pastor, J. Herbert Bruce; that if the said church determines that the pastor should be removed then the said charges against the pastor shall be referred to an advisory council consisting of three members, and that said members shall be selected as follows: One to be selected by the church; one to be selected by the pastor and one to be named by this Honorable Court, and this Honorable Court does hereby appoint Rev. J. S. Williams of the New Mt. Zion Baptist Church, and the said advisory council shall hear all of the evidence that may be placed before them and shall conduct such meetings and investigations as they deem advisable; shall make their reports to the church and shall act in an advisory capacity of the Olivet Missionary Baptist Church."

Subsequently the order was amended by adjourning the meeting until June 17th, and later to July

1st. Prior to the latter date defendants and cross-plaintiffs filed a claim of appeal from the order of June 4th. As indicated by the reasons and grounds for appeal, it is the claim of appellants, in substance, that the order in question was improper because there was no competent evidence before the court to show that the prior order of April 24th had not been carried out, and further that the order of June 4th amounted to an improper judicial interference with the internal government of the Olivet Missionary Baptist Church with reference to ecclesiastical matters.

Appellees contend in their brief that the order of June 4th was interlocutory, and as such not appealable without leave having been first obtained. This question was raised by motion to dismiss, which was denied by this Court on January 7, 1947. In considering the question at that time we concluded that the order, if carried out, would definitely and finally dispose of certain issues involved in the controversy, and that in consequence it should be regarded as final and appealable under principles recognized and applied in *Wurzer* v. *Geraldine,* 268 Mich. 286; *Commissioner of Insurance* v. *Lloyds Ins. Co. of America, Inc.,* 287 Mich. 599; *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers Mutual Fire Insurance Assn.,* 297 Mich. 188; *Cooper* v. *LaBuda,* 308 Mich. 737. In view of the denial of the motion to dismiss, the question sought to be raised by appellees is not involved in this appeal.

The claim of appellants that the order from which they appeal was improperly entered because there was no competent showing before the court to justify the conclusion that the prior order of April 24th had not been observed in the holding of the meeting provided for thereby, does not require extended con-

sideration. Apparently it is predicated on the theory that the earlier order was within the jurisdiction of the court. In a general way, however, the purpose of such order was to accomplish the result contemplated by the order of June 4, the provisions of which were more specifically stated. We need not consider whether the order of April 24th is open to the basic objection urged against the order from which the appeal has been taken, namely, that the jurisdiction of the church in ecclesiastical matters was improperly invaded thereby. In any event there was competent evidence before the trial court to justify the conclusion that the prior order had not been carried out in manner and form as intended.

This brings us to a consideration of the principal issue raised by the appeal. Is the order of June 4th of such character as to constitute judicial interference with the internal government of the Olivet Missionary Baptist Church with reference to ecclesiastical matters? It will be noted that the order in question, as clearly indicated by the provisions thereof above quoted, specifically requires the holding of the meeting, directs how the same shall be conducted, and specifies who shall be permitted to take part in it. It further commands that the church shall prefer charges against the pastor and consider his removal. In the event that members of the church decide in favor of such removal then reference to an advisory council selected in the manner prescribed by the order is required. The order does not contemplate action affecting property rights. Clearly, the matter of the accounting sought by the bill of complaint, or the injunctive relief asked in the bill and in the cross bill, are not contingent on the removal or retention of the pastor. They may, in other words, be determined without recourse to the proceeding contemplated by the order of the trial court.

This Court in prior decisions has repeatedly recognized the rule that judicial interference in the purely ecclesiastical affairs of religious organizations is improper. Thus in *Calvary Baptist Church of Port Huron, Michigan* v. *Shay,* 292 Mich. 517, it was said:

"With the doctrinal disputes between the parties, whether they be with respect to 'fundamentalism' or any other ecclesiastical matters, the courts have no concern. Much has been written and much can be said on this subject, but little that is new can be added to that expressed by this Court in *Fuchs* v. *Meisel,* 102 Mich. 357 (32 L. R. A. 92) ; *Russian Orthodox All Saints Church* v. *Darin,* 222 Mich. 35; *Hanna* v. *Malick,* 223 Mich. 100; *Komarynski* v. *Popovich,* 232 Mich. 88; *Horbal* v. *St. John's Greek Catholic Church,* 260 Mich. 331; and *All Saints Polish National Catholic Church* v. *Gerald,* 271 Mich. 187. It is enough to say that we have not departed from the rule that:

" 'In matters of church polity purely ecclesiastical, civil courts do not interfere, but when property rights are involved they are to be tested in the civil courts by the civil laws.' *Komarynski* v. *Popovich, supra.* \* \* \*

"Under the form of government of the Baptist Church, that of local majority rule, the good sense and sound judgment of the membership should prevail. Members of any church ought to be disposed to further the cause of their religious belief rather than dissipate their energy and means in senseless bickering. In any event, the parties should be encouraged to follow this course and given every opportunity to do so. Again we say, in church disputes, courts are concerned with property rights only, and those rights may be protected by court order if occasion requires."

In *Attorney General, ex rel. Ter Vree,* v. *Geerlings,* 55 Mich. 562, an information in the nature of quo warranto was filed to determine whether the

defendants were entitled to the offices of deacons and ex officio trustees of the First Dutch Reformed Church of Holland. In sustaining a demurrer to the information it was said:

"The question principally discussed by counsel in the case is that of the jurisdiction of the court. The question has two branches: First, whether in the case of a corporate office like the one now in question, the Supreme Court has original jurisdiction to inquire into usurpations of office; and second, whether the office in question is one which is properly the subject of this proceeding. Upon the first branch of this question we say nothing at this time; only remarking that passing it without further remark is not to be understood as the intimation of an opinion one way or the other.

"Upon the second branch of the question we are agreed against the jurisdiction. This case brings in question the right to a purely ecclesiastical office, namely, the office of deacon in the church. This is an office not created or expressly authorized by State law, but is one created by an unincorporated ecclesiastical body, and filled by election by a body which possesses no corporate powers or functions. Over the office and over the election to it the courts of the State have no authority whatever; they are controlled exclusively by an unincorporated membership in an organization whose unincorporated tribunals decide for themselves, and decide finally upon the elections.

"The ground assigned as supporting the right to inquire into the rightfulness of the elections in this case, is that the deacons in the unincorporated society become ex officio trustees in the corporation. But that fact cannot put the religious body and its elections under the control of the temporal courts. If property rights become involved and trusts come in question, the courts will have no difficulty in dealing with them; but nothing of the sort is in question on this information."

Of like import is *Borgman* v. *Bultema,* 213 Mich. 684, where the Court quoted with approval from *Morris Street Baptist Church* v. *Dart,* 67 S. C. 338 (45 S. E. 753, 100 Am. St. Rep. 727), as follows:

" 'The civil courts will not enter into a consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty untrammeled by State authority. On this principle the action of the church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this court will only consider whether the church has ordered his exclusion, not whether it was right in doing so. Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted.' "

See, also, *Van Vliet* v. *Vander Naald,* 290 Mich. 365.

In *Russian Orthodox All Saints Church* v. *Darin,* 222 Mich. 35, cited by appellees, the bill of complaint was filed, as in the case at bar, for the purpose of obtaining injunctive relief and an accounting. The trial court held that the plaintiff was entitled to the possession of the property involved. Apparently, as incidental to the settlement of property rights, the trial court required a corporate election to be held for the purpose of selecting certain church officers. In commenting on the propriety of such order it was said:

"While the extent to which a court of equity may direct or supervise such corporate election might in certain respects be questioned, it is clearly within the power of the court to withhold the relief asked, under the conditions shown here, until an honest election has been held on that basis. Delivery of possession and accounting ordered by the trial court should be deferred until after such election is held and a new church committee, or board of directors, duly chosen to transact the business of the corporation."

The power of a court of equity to withhold the granting of relief pending the performance of proper conditions therefor is scarcely open to question. In the instant case, however, the order from which the appeal has been taken does not rest on any such basis, and there is no claim that it can be sustained on the theory that its observance is essential to the granting of relief by way of injunction and an accounting. Under the general practice recognized and applied in the prior decisions of this Court above discussed we think that the order of the trial court constituted improper judicial interference with the internal management of the church in ecclesiastical matters.

Appellees contend in their brief that the order of April 24, 1946, was essentially a consent order, that it was prepared by counsel for defendants and cross-plaintiffs, and that the order of June 4th was of like character. The record before us, by which we are governed, cannot be said to support the claim. Moreover, the rule is well established in this State that jurisdiction with reference to the subject matter of a controversy may not be conferred by consent of the parties. In *City of Detroit* v. *Michigan Public Utilities Commission,* 288 Mich. 267 (29 P. U. R. [N. S.] 203), the Court said:

"But the parties by consent or conduct cannot give the court jurisdiction over the subject matter where it otherwise would have no jurisdiction, *Hoffman* v. *Security Trust Co. of Detroit,* 256 Mich. 383; *Exo* v. *Detroit Automobile Inter-Insurance Exchange,* 259 Mich. 578; *Orloff* v. *Morehead Manfg. Co.,* 273 Mich. 62; *Strandt* v. *Strandt,* 278 Mich. 354."

Having determined that the trial court exceeded its jurisdiction in making the order involved in this appeal it becomes unnecessary to consider whether the parties, expressly or by conduct, assented thereto. They could not by such consent confer on the court an authority that it did not otherwise possess.

For the reasons stated the order from which the appeal has been taken is reversed, and the cause is remanded to the trial court for further proceedings consistent herewith. In view of the nature of the case, and because of the unusual circumstances involved, no costs are allowed.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.