DLAIKAN v ROODBEEN

Docket No. 155595. Submitted April 12, 1994, at Detroit. Decided September 6, 1994, at 9:20 A.M.

Nadeem H. and Jacqueline C. Dlaikan, individually and as next friends of their daughters, Nicole M. and Jennifer L. Dlaikan, and other similarly situated parents of former pupils of St. Pius School, brought an action in the Wayne Circuit Court against Henry W. Roodbeen, Clara Seeley, St. Pius School, and others, alleging intentional misrepresentation, negligence, and breach of contract as a result of the refusal of defendant Roodbeen, pastor of the Parish of St. Pius X, to readmit the plaintiffs' children as pupils at St. Pius School for the 1991-92 school year. Roodbeen, Seeley, and the school moved for summary disposition, arguing that the court did not have subject-matter jurisdiction to hear the contract action. The court, Michael L. Stacey, J., denied the motion. Roodbeen, Seeley, and the school appealed by leave granted.

The Court of Appeals held:

Whether a court has subject-matter jurisdiction is a question of law. Although civil courts have jurisdiction to determine property rights involving ecclesiastical organizations, the plaintiffs' claims relating to the right of their children to attend St. Pius School are so entangled in questions of religious doctrine or ecclesiastical polity that they are beyond the jurisdiction of civil courts to hear. Accordingly, the trial court should have granted the motion for summary disposition. The plaintiffs' claims must be dismissed for lack of jurisdiction.

Reversed.

TAYLOR, J., dissenting, stated that the plaintiffs' claims involved questions of the existence of a contractual obligation that would not require the trial court to consider questions of religious doctrine or ecclesiastical polity and, accordingly, the ecclesiastical exemption is not applicable under the facts presented here.

REFERENCES

Am Jur 2d, Religious Societies, §§ 31, 32.
See ALR Index under Religion and Religious Societies.

RELIGIOUS CORPORATIONS AND ASSOCIATIONS — COURTS — JURISDIC-
TION — ECCLESIASTIC QUESTIONS — SCHOOLS.

The issue of admission to an ecclesiastical organization's liturgi-
cal or eduational functions would entangle civil courts in
matters of doctrine or ecclesiastical polity; a civil court should
decline to hear such questions on the basis of lack of subject-
matter jurisdiction.

*N. Dawn Nasser,* for the plaintiffs.

*Bodman, Longley & Dahling* (by *Joseph A. Sulli-
van* and *Diane L. Akers*), for the defendants.

Before: SHEPHERD, P.J., and TAYLOR and R. D.
GOTHAM,* JJ.

R. D. GOTHAM, J. Defendants Henry Roodbeen,
Clara Seeley, and St. Pius School appeal by leave
granted from the circuit order that denied their
motion for summary disposition, which had as-
serted that the court lacked subject-matter juris-
diction over the action. We reverse and order the
dismissal of plaintiffs' claims against defendants.

This is an action by three families against vari-
ous representatives of the St. Pius School and the
school itself. Plaintiffs brought their action to
challenge the decision of Father Henry Roodbeen,
pastor of the Parish of St. Pius X, not to accept
plaintiffs' children as students at the parish school
for the 1991-92 school year. At the time the circuit
court denied defendants' motion, three counts re-
mained in the action, which were labeled inten-
tional misrepresentation, negligence, and breach of
contract.

Defendants' sole claim on appeal is that the
circuit court lacked subject-matter jurisdiction.
Whether the trial court had proper subject-matter
jurisdiction is a question of law for this Court to

* Circuit judge, sitting on the Court of Appeals by assignment.

decide. *Dep't of Natural Resources v Holloway Construction Co,* 191 Mich App 704, 705; 478 NW2d 677 (1991). The trial court ultimately held that it had subject-matter jurisdiction on the basis that this was a contract action.

It is claimed that plaintiffs' admission to the St. Pius School is a contract right, that contract rights are property rights, and that civil courts have jurisdiction to determine property rights involving ecclesiastical organizations. But jurisdiction is limited to property rights that can be resolved by application of civil law. *Berry v Bruce,* 317 Mich 490; 27 NW2d 67 (1947); *Maciejewski v Breitenbeck,* 162 Mich App 410, 414; 413 NW2d 65 (1987).

Reference to the form of the claim may oversimplify the issue. We must "look to the substance and effect of [the] complaint, not its emblemata." *Natal v Christian & Missionary Alliance,* 878 F2d 1575, 1577 (CA 1, 1989).

When the claim involves the provision of the very services (or as here refusal to provide these services) for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law. In this regard there can be no distinction between a church providing a liturgical service in its sanctuary and providing education imbued with its religious doctrine in its parochial school. A civil court should avoid foray into a "property dispute" regarding admission to a church's religious or educational activities, the essence of its constitutionally protected function. *Borgman v Bultema,* 213 Mich 684, 703; 182 NW 91 (1921) (expulsion of clergy or members). To do so is to set foot on the proverbial slippery slope toward entanglement in matters of doctrine or ecclesiastical polity.

In obvious contrast, when an ecclesiastical orga-

nization enters into a contract to buy or sell property, to fix the church roof, or to interact in some other way with the secular world, its activity is governed by civil law alone. Similarly, a dispute over title to property between factions of such an organization may well be determined without reference to doctrine or ecclesiastical polity. *Bennison v Sharp,* 121 Mich App 705; 329 NW2d 466 (1982).

Here the pleadings demonstrate that plaintiffs' claims are so entangled in questions of religious doctrine or ecclesiastical polity that the civil courts lack jurisdiction to hear them. *Maciejewski, supra.* Even the claim that plaintiffs' children were denied "due process" by the failure of the parochial school to follow its own rules engages the issue of ecclesiastical polity. *Natal, supra* at 1577.

Moreover in this case plaintiffs allege no express written contract manifesting application of civil law alone. Under their theory of implied contract, an inquiry into the parties' relationship again necessarily entails an excursion into ecclesiastical polity. The same is true for the claims of intentional misrepresentation and professional negligence. Furthermore, we are aware of no precedent in this state for a claim of clergy malpractice where the only allegations relate to the performance of ecclesiastical functions such as the operation of a church school.

We reverse and dismiss plaintiffs' claims against defendants for lack of jurisdiction. MCR 2.116(C) (4).

SHEPHERD, P.J., concurred.

TAYLOR, J. *(dissenting).* I dissent from the majority opinion because I believe that it mistakenly creates an irrebuttable presumption in favor of

religious institutions. Adjudication of plaintiffs' contract claim will not result in "[setting] foot on the proverbial slippery slope toward entanglement in matters of doctrine or ecclesiastical polity." *Ante* at 593. To the contrary, by its unwarranted and unwise expansion of the ecclesiastical exception provided by the Free Exercise Clause, the majority has created a jurisprudential black hole in which the exception swallows the rule of law.

This is an action by three families pleading, in relevant part, a breach of contract claim against various representatives of the St. Pius School and the school itself. Plaintiffs brought their action to challenge the decision of Henry Roodbeen, the pastor of the parish, not to readmit their children as students in the parish school for the 1991-92 school year. Plaintiffs' contract claim is based on consideration given by them and their reliance on the established pattern of readmitting the children. The pleadings indicate that the dispute between defendants and plaintiffs had to do with teachers' lesson plans, allegations of improperly calculated grades, violation of the hair-length provision of the student dress code, and plaintiffs' complaints about the "people skills" of defendant Seeley. Defendants' pleadings do not set forth any provision of canon law granting Father Roodbeen permission to make such decisions, nor do they assert instances of conduct violative of Catholic doctrine on the part of plaintiffs' children.

Procedurally, when the circuit court order under review was issued, three counts remained in this action: intentional misrepresentation, negligence, and breach of contract. The trial court's denial of defendants' motion was based solely on its ruling that a viable contract claim was presented, a question not requiring determination of Roman Catholic doctrine or policy. Therefore, the majori-

ty's opinion regarding the other two claims—intentional misrepresentation and negligence—is untimely because those claims have not been decided by the trial court. In any event, neither of these claims requires an excursion into ecclesiastical polity, a trait they share with the contract claim properly at issue here.

Defendants argue that the trial court concluded that there should be a trial of the issue whether the pastor "made a wise or 'objectively' reasonable decision" and that this is erroneous because "[u]nder Roman Catholic ecclesiastical law, a parish pastor has absolute discretion over which parishioners participate in which parish activities." In other words, defendants argue that any decisions related to the parish school are ecclesiastical in nature and therefore subject to the unbridled discretion of the pastor. Aside from their mischaracterization of the trial court's decision, which held only that plaintiffs presented a viable contract action, defendants' argument is based on a misapprehension of the proper scope of the Free Exercise Clause of the First Amendment, a misapprehension equally apparent in the majority's analysis. Because plaintiffs' claim does not involve a purely ecclesiastical concern, I would hold that the trial court's denial of defendants' motion for summary disposition was correct as a matter of law.

As the trial court correctly determined, plaintiffs' contract claim is not the type of dispute between a church and its members that is exempt from the jurisdiction of civil courts. "In matters of church polity purely ecclesiastical civil courts do not interfere, but when property rights are involved they are to be tested in the civil courts by the civil laws." *Komarynski v Popovich,* 232 Mich 88, 99; 205 NW 184 (1925). "With the doctrinal disputes between the parties, whether they be with

respect to 'fundamentalism' or any other ecclesiastical matters, the courts have no concern." *Calvary Baptist Church of Port Huron, Michigan v Shay,* 292 Mich 517, 520; 290 NW 890 (1940). "This Court in prior decisions has repeatedly recognized the rule that judicial interference in the purely ecclesiastical affairs of religious organizations is improper." *Berry v Bruce,* 317 Mich 490, 499; 27 NW2d 67 (1947). The salient point in this doctrinal area is that religious organizations are immune from the jurisdiction of civil courts only in matters that are purely ecclesiastical, i.e., pertaining to religious doctrine or church polity. More specifically, the unreviewable discretion afforded to religious authorities does not encompass all decisions regarding all activities—secular and religious—undertaken by the religious organization; rather, it insulates only those decisions directly affecting the propagation of religious doctrine. *Assemany v Archdiocese of Detroit,* 173 Mich App 752, 763; 434 NW2d 233 (1988). Religious doctrine refers to "the ritual and liturgy of worship or the tenets of faith." *Jones v Wolf,* 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979). Polity is defined as the organization and form of government of the church. *Maciejewski v Breitenbeck,* 162 Mich App 410, 414; 413 NW2d 65 (1987). Resolution of plaintiffs' contract claim does not require judicial interference in a purely ecclesiastical matter.

That defendants' argument is not based on a matter of religious doctrine or liturgy is readily apparent by analogy to *Maciejewski.* In that case, this Court affirmed the trial court's decision that the issues of a bishop's power to assign a certain priest to a parish and parishioners' rights to receive communion and to assist the priest at Mass are beyond the jurisdiction of civil courts. It is, of course, indisputable that adjudication of these is-

sues would require the court to "stray into questions of religious doctrine or ecclesiastical polity," *id.* at 414, an inquiry that is prohibited by the Free Exercise Clause. Civil courts properly assert jurisdiction only over disputes involving "property rights which can be resolved by application of civil law." *Id.* "A contract right is a right in property." *Wiethoff v St Veronica School,* 48 Mich App 163, 166; 210 NW2d 108 (1973). Plaintiffs' argument is that their payment of the $50 preregistration fee and the usual practice of the school in readmitting students gave rise to a contract implied in fact. This contract claim is the basis on which the trial court denied defendants' motion for summary disposition, a fact that cannot be overemphasized.

It has long been established that religious organizations are equally subject to the principles of contract law and property law as all other associations, and disputes over such subject matters are justiciable by civil courts, providing an inquiry into religious doctrine is not required. *Watson v Jones,* 80 US (13 Wall) 679, 714, 725; 20 L Ed 666 (1872). Furthermore, an archbishop (and therefore, by analogy to the instant case, defendant Roodbeen) "is a juristic person, amenable to the [civil] courts for the enforcement of any legal right." *Gonzalez v Roman Catholic Archbishop of Manila,* 280 US 1, 16; 50 S Ct 5; 74 L Ed 131 (1929). Because plaintiffs' "claim is, in substance, that [they are] entitled to the [legal] relief sought," the trial court properly asserted jurisdiction over the subject matter. *Id.*

Whether a dispute is properly before a civil court depends on "the substance and effect of [the] complaint, not its emblemata." *Natal v Christian & Missionary Alliance,* 878 F2d 1575, 1577 (CA 1, 1989). It is not important how this suit is labeled by the parties; rather, a court must determine

precisely what it is being called upon to decide. It is on this particular point that the majority loses sight of the actual substance of the issue before us.

Unsupported by the factual record below or the relevant case law, the majority proclaims that the issue presented here "involves the provision of the very services . . . for which the organization enjoys First Amendment protection." *Ante* at 593. This judicial fiat flouts the established principles in this area of the law. The Free Exercise Clause of the First Amendment does not shield inviolably from civil legal authority all activities conducted by religious groups. Rather, it prevents civil authorities from getting involved in disputes concerning religious doctrines and liturgical services essential to the observance of the purely ecclesiastical mission of religious groups.

The majority seems to believe that a parish school is identical to a seminary (or other purely religious educational institution) in which the sole educational mission is to prepare students for clerical roles intimately involved in the propagation of religious doctrine. The difference between such a theological school and the parish-run elementary school involved here is, of course, sufficiently unmistakable to allow for taking judicial notice of it. The salient fact in this regard is that membership in the Catholic faith is not even required of students in the parish school. In the face of this fact alone, the majority's declaration that "there can be no distinction between a church providing a liturgical service in its sanctuary and providing education imbued with its religious doctrine in its parochial school" *ante* at 593, is wholly irrelevant. Furthermore, the majority's bald assertion that the parish school is "imbued with its religious doctrine" and that its "educational activities [are] the essence of its constitutionally pro-

tected function," *ante* at 593, is inaccurate. The actual substance of plaintiffs' complaint deals with educational and pedagogical matters common to all elementary schools, secular and parochial. Moreover, there is no evidence in the record that purely ecclesiastical or liturgical considerations entered into the challenged decision. Thoughtful attention to the actual substance of the dispute leads ineluctably to the realization that adjudication of plaintiffs' contract claim is not precluded by the Free Exercise Clause of the First Amendment.

In *Maciejewski, supra,* the plaintiffs argued that they were seeking injunctive relief and damages for the tort of intentional infliction of emotional distress. *Maciejewski, supra* at 411-412. However, as discussed above, what the plaintiffs actually sought was civil adjudication of the qualifications of a parish priest and of the parishioners' rights regarding sacraments of the Roman Catholic faith. *Id.* at 414, 416. In the case before us, plaintiffs have stated a valid contract claim that does not depend on any underlying doctrinal or liturgical issue. Defendants are merely attempting to evade any potential contractual obligation by asserting that all decisions regarding all aspects of any activities carried on by the church are purely ecclesiastical and, therefore, beyond the jurisdiction of civil courts. This is not—and, by any reasonable view of the intended accommodation of religious freedom, cannot be—an accurate statement of free exercise jurisprudence.

In effect, defendants' claim is that invocation of this ecclesiastical exemption trumps the application of secular law in all contexts and with respect to all persons standing in opposition to a religious organization. This is an inaccurate statement of the unreviewable discretion afforded by the Free

Exercise Clause. There are only two situations in which religious bodies exercise unbridled discretion: where an issue involves a purely ecclesiastical matter (which, as already discussed, is not the case here), and where the challenged decision pertains to a person whose function is integral to the doctrinal mission of the religious organization.

This Court previously has explained, in the context of claims based on Title VII of the Civil Rights Act of 1964,[1] that the proper initial inquiry is "the function of the position" of the party challenging the decision of a religious body. *Assemany, supra* at 761. If a person occupies "a pastoral-liturgical leadership role in the parish" or is "intimately involved in the propagation of [religious] doctrine," then the religious organization's decision is unreviewable if it is based on a tenet of the organization's religious beliefs. *Id.* at 763. Judicial review of Title VII claims concerning "employment decisions by religious bodies regarding lay teachers in church-run schools whose duties include teaching religion directly or indirectly . . ." [is also prohibited.] *Id.* at 761. However, "[i]n cases involving church employees who are not involved in the propagation of religious faith or religious doctrine, . . . Title VII actions against religious employers are not barred by the Free Exercise Clause notwithstanding the employers' arguments that their employment decisions were founded on religious beliefs." *Id.* at 762. This Court ultimately held that the plaintiff's claim was barred by the Free Exercise Clause because the function of his position was such that he had "assumed a pastoral-liturgical leadership role in the parish" and "was intimately involved in the propagation of Catholic doctrine . . . ." *Id.* at 763.

Logically, in the general context of free exercise

---

[1] 42 USC 2000e *et seq.*

jurisprudence, the rationale explicated in *Assemany* is not limited solely to Title VII claims; rather, it applies to all valid legal claims (statutory or common law) brought against a religious organization.

Plaintiffs' contract claim is sufficient as a matter of law to withstand summary disposition. Plaintiffs are not ministers, or even employees, of St. Pius X Parish, and defendants do not assert any issue regarding the propagation of religious doctrine as the basis of the decision challenged by plaintiffs. I would also note again defendants' concession that membership in St. Pius X Parish, or even in the Catholic faith, is not required of students in the parish school. Therefore, this analytical framework, which depends on the status of the party in opposition to the religious organization, also supports the trial court's decision.

I wish to emphasize that I am not advocating the creation of any path-breaking precedent: that secular laws are generally applicable to religious organizations, except for the narrow ecclesiastical exemption discussed above, is unremarkable. See, e.g., *Dep't of Social Services v Emmanuel Baptist Preschool,* 434 Mich 380; 455 NW2d 1 (1990) (church school subject to state licensing requirements).[2] Furthermore, even when advancing legitimate free exercise claims, "[r]eligious organizations are not absolutely free from governmental interference where there is a state interest of sufficient magnitude to override the interest claim-

---

[2] The presumption of the validity of secular laws to matters concerning religious organizations extends to criminal, as well as civil, laws. See, e.g., *Kedroff v St Nicholas Cathedral,* 344 US 94, 109; 73 S Ct 143; 97 L Ed 120 (1952) ("If [subversive or, under the relevant statute, otherwise illegal] action should be actually attempted by a cleric, neither his robe nor his pulpit would be a defense.").

ing protection under the Free Exercise Clause."
*Assemany, supra* at 759.[3]

In the instant case, the parties challenging defendant Roodbeen's decision do not occupy liturgical leadership roles and are not alleged to be intimately involved in the propagation of Catholic doctrine. Therefore, defendants' invocation of the ecclesiastical exemption is without any effect under the facts presented here.

Determination of the validity of the contract rights asserted by plaintiffs does not require the trial court to stray into questions of religious doctrine or ecclesiastical polity. The claim is based on consideration given by the plaintiffs, reliance on the past practice of the school in readmitting the children, and specified claims of damages. Therefore, plaintiffs' contract claim is cognizable by the civil courts and the trial court properly denied defendants' motion for summary disposition.

I dissent.

---

[3] The requisite magnitude of the state interest was described in *Assemany* as being satisfied only by "governmental interests of the highest order." *Id.* at 759 [citing *Wisconsin v Yoder,* 406 US 205, 214-215; 92 S Ct 1526; 32 L Ed 2d 15 (1972)]. In light of the Supreme Court's most recent statement regarding this issue, see *Employment Division, Oregon Dep't of Human Resources v Smith,* 494 US 872, 883-889; 110 S Ct 1595; 108 L Ed 2d 876 (1990) (expressly rejecting the "compelling interest" test), the stringent *Assemany* standard is no longer valid. See also *Smith* at 878 (if a burden on the free exercise of religion is "merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended").