# STATE OF MICHIGAN

# COURT OF APPEALS

---

BETTINA WINKLER, by her next friends
HELGA DAHM WINKLER and MARVIN
WINKLER,

Plaintiff-Appellee,

v

MARIST FATHERS OF DETROIT, INC., d/b/a
NOTRE DAME PREPARATORY HIGH
SCHOOL AND MARIST ACADEMY,

Defendant-Appellant.

UNPUBLISHED
November 12, 2015

No. 323511
Oakland Circuit Court
LC No. 2014-141112-CZ

---

Before: SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] from the trial court's order denying its motion for summary disposition pursuant to MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons set forth below, we reverse and remand for the entry of an order granting summary disposition in defendant's favor.

Notre Dame Marist Academy (Marist) is a private, Catholic middle school in Pontiac, Michigan. Notre Dame Preparatory School (Notre Dame) is a private, Catholic high school in Pontiac, Michigan. Together, Marist and Notre Dame constitute the defendant in this case, Marist Fathers of Detroit, Inc, d/b/a Notre Dame Preparatory High School and Marist Academy. Plaintiff, Bettina Winkler, enrolled in Marist as both a seventh-grade and eighth-grade student. According to plaintiff's complaint, she was "assured on numerous occasions that if she enrolled at Marist for 7th and 8th grade, she would be guaranteed placement in Notre Dame Prep for High School 9th grade." However, plaintiff was not granted admission to Notre Dame. Approximately two months after being denied admission to Notre Dame, plaintiff was diagnosed with certain learning disabilities. Thereafter, this lawsuit was filed, alleging in pertinent part discrimination under the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1401

---

[1] *Bettina Winkler v Marist Fathers of Detroit, Inc*, unpublished order of the Court of Appeals, entered December 18, 2014 (Docket No. 323511).

-1-

*et seq.* Plaintiff alleged that despite being "long aware that [she] had a learning disability," defendant denied her admission to Notre Dame and "consistently relied upon her learning disability . . . as a justification" for doing so.

Defendant filed a motion for summary disposition. Defendant argued that summary disposition pursuant to MCR 2.116(C)(4) was appropriate because, pursuant to *Dlaikan v Roodeen*, 206 Mich App 591, 593; 522 NW2d 719 (1994), civil courts do not have jurisdiction over a religious school's admission or denial of admission under the First Amendment to the United States Constitution. Defendant also argued that summary disposition pursuant to MCR 2.116(C)(10) was appropriate because, as a matter of law, plaintiff could not prove disability discrimination under the PWDCRA. Plaintiff responded that the trial court had subject-matter jurisdiction over her claim pursuant to PWDCRA and that *Dlaikan* was distinguishable. Plaintiff further asserted that she was denied admission to Notre Dame solely because of her disability.

The trial court denied defendant's motion pursuant to MCR 2.116(C)(4). The trial court held that plaintiff's disability claim could be distinguished from the *Dlaikan* case, concluding that it had subject-matter jurisdiction to consider the claim under the PWDCRA. The trial court deferred reaching a decision regarding defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), concluding that doing so would be premature. Defendant filed an interlocutory appeal, which this Court granted. Michigan Protection & Advocacy Service, Inc. moved for leave to file an amicus curiae brief before this Court, and this Court granted that motion.[2]

Defendant argues that the civil courts lacks subject-matter jurisdiction over this claim pursuant to the protections of the First Amendment. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Williams v Enjoi Transp Solutions*, 307 Mich App 182, 185; 858 NW2d 530 (2014). Summary disposition is appropriate pursuant to MCR 2.116(C)(4) when the trial court "lacks jurisdiction of the subject matter." MCR 2.116(C)(4); *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). "This Court also reviews constitutional issues de novo on appeal." *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 155; 756 NW2d 483 (2008).

"It is well settled that courts, both federal and state, are severely circumscribed by the First and Fourteenth Amendments to the United States Constitution and art 1, § 4 of the Michigan Constitution of 1963 in resolution of disputes between a church and its members." *Maciejewski v Breitenbeck*, 162 Mich App 410, 413-414; 413 NW2d 65 (1987). "[C]ivil courts have the general authority to resolve church property disputes." *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 615; 777 NW2d 15 (2009). While "civil courts have jurisdiction to determine property rights involving ecclesiastical

---

[2] *Bettina Winkler v Marist Fathers of Detroit, Inc*, unpublished order of the Court of Appeals, entered June 25, 2015 (Docket No. 323511).

organizations," "jurisdiction is limited to property rights that can be resolved by application of civil law." *Dlaikan*, 206 Mich App at 593. That is, under the First Amendment, circuit courts are prohibited from resolving church property disputes on the basis of religious doctrine and ecclesiastical polity. *Lamont Community Church*, 285 Mich App at 615. "Whenever the court must stray into questions of religious doctrine or ecclesiastical polity the court loses jurisdiction. Religious doctrine refers to ritual, liturgy of worship and tenants of the faith. Polity refers to organization and form of government of the church." *Pilgrim's Rest Baptist Church v Pearson*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket Nos. 318797, 319571); slip op at 4 (citations omitted), quoting *Maciejewski*, 162 Mich App at 414. This limitation on civil court jurisdiction is referred to as the ecclesiastical abstention doctrine.

In *Dlaikan*, three families sued a parochial school and its representatives after their children were denied admission to the school. *Dlaikan*, 206 Mich App at 592. The school and its representatives moved for summary disposition pursuant to MCR 2.116(C)(4), the trial court denied their motion, and this Court reversed. *Id*. at 593-594. The *Dlaikan* Court held that review of the defendant school's admission decision fell outside the jurisdiction of civil courts, explaining:

> When the claim involves the provision of the very services (or as here refusal to provide these services) for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law. In this regard there can be no distinction between a church providing a liturgical service in its sanctuary and providing education imbued with its religious doctrine in its parochial school. A civil court should avoid foray into a "property dispute" regarding admission to a church's religious or educational activities, the essence of its constitutionality protected function. To do so is to set foot on the proverbial slippery slope toward entanglement in matters of doctrine or ecclesiastical polity. [*Id*. at 593 (citation omitted).]

The *Dlaikan* Court stated that in determining whether a dispute is based on religious doctrine and ecclesiastical polity, "[r]eference to the form of the claim may oversimplify the issue." *Id*. Instead, courts "must look to the substance and effect of [the] complaint, not its emblemata." *Id*. (citation and internal quotation marks omitted). The Court explained that some activity by an ecclesiastical organization may be governed by civil law alone, such as entering into a contract to buy or sell property or interact some other way with the secular world. *Id*. at 593-594. However, the plaintiff's claims regarding admission to the school were "so entangled in questions of religious doctrine or ecclesiastical policy that the civil courts lack jurisdiction to hear them." *Id*. at 594.

We hold that *Dlaikan* controls in the present case. Here, as in *Dlaikan*, plaintiff is suing a parochial school after she was denied admission. Thus, "the claim," whether it is premised on a breach of contract as in *Dlaikan* or disability discrimination as is the case here, "involves the provision of the very services (or as here refusal to provide these services) for which the organization enjoys First Amendment protection[.]" *Id*. at 593. Pursuant to *Dlaikan*, "[a] civil court should avoid foray into a 'property dispute' *regarding admission to a church's religious or*

*education activities*[.]" *Id*. (emphasis added; citation omitted). Thus, the trial court erred in denying defendant summary disposition pursuant to MCR 2.116(C)(4).

Plaintiff, amicus, and the trial court take the position that this case is distinguishable from *Dlaikan* because plaintiff's claim involves disability discrimination. Further, plaintiff asserts that there was no religious justification for plaintiff's rejection. However, both arguments would require the courts to delve into the decision-making process of defendant, a religious institution. As *Dlaikan* explained, the factual basis for the denial is not an appropriate consideration by civil courts. The crux of plaintiff's complaint is that she was denied admission to defendant's school. Thus, the claim at issue in this case "involves the provision of the very services . . . for which the organization enjoys First Amendment protection[.]" *Id*. at 593. The "emblemata" of the claim, whether it be breach of contract or discrimination, is irrelevant. *Id*. (citation omitted). Pursuant to *Dlaikan*, any further inquiry by civil courts into the basis for that denial invades constitutional protections provided to defendant as a religious institution.

This point is further illustrated by plaintiff's argument that *Dlaikan* "provided scant detail about the facts leading to the claim." Plaintiff is correct. The majority opinion in *Dlaikan* only stated that "the pleadings demonstrate[d] that plaintiffs' claims [were] so entangled in questions of religious doctrine or ecclesiastical policy that civil courts lack[ed] jurisdiction to hear them." *Id*. at 594. The dissent provided slightly more details, explaining that the students were denied admission to the school based on disputes involving the "teachers' lesson plans, allegations of improperly calculated grades, violation of the hair-length provision of the student dress code, and plaintiffs' complaints about the 'people skills' of" one of the school's representatives. *Id*. at 595 (TAYLOR, J., dissenting). The dissent stated that the complaint did not refer to religious doctrine as a basis for denial of admission. *Id*. Contrary to plaintiff's assertions, we conclude that the majority's refusal to consider the factual basis for the plaintiff's denial illustrates the majority's conclusion—that civil courts have no place analyzing the decision-making process of a religious institution regarding admission. It is inappropriate for this Court to delve into the factual basis for the denial, as the First Amendment protections are triggered prior to that inquiry.

Amicus also asserts that *Dlaikan* was wrongly decided and does not conform to precedent related to the ecclesiastical abstention doctrine and related constitutional protections afforded to religious institutions. However, this Court is bound by its decision in *Dlaikan*. MCR 7.215(J)(1). Thus, we reject this argument.

Defendant next argues that summary disposition was proper pursuant to MCR 2.116(C)(4) because the PWDCRA does not apply to religious institutions. Defendant further argues that, even assuming the PWDCRA does apply to religious institutions, defendant is entitled to summary disposition pursuant to MCR 2.116(C)(10) because plaintiff cannot show that she was discriminated against. Based on our disposition on defendant's first issue, we decline to address these remaining issues. Amicus asserts that this Court is obligated to address

possible dispositive statutory issues before deciding constitutional issues.[3]  However, assuming without deciding that the PWDCRA applies to religious institutions, we would still conclude that *Dlaikan* applies and controls in this matter.  Thus, it is unnecessary to engage in further analysis.  Moreover, we note that several of the issues raised on appeal, including whether defendant was entitled to summary disposition pursuant to MCR 2.116(C)(10), were not decided by the trial court.  Appellate review is limited to issues actually decided by the trial court.  *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007).

In conclusion, we determine that the holding in *Dlaikan* applies, and that the trial court does not have subject-matter jurisdiction to review plaintiff's claim based on constitutional protections afforded by the First Amendment.  This Court is bound by *Dlaikan*.  Thus, we reverse and remand with instructions that the trial court enter an order granting defendant summary disposition in this matter.

Reversed and remanded.  We do not retain jurisdiction.  Defendant, the prevailing party, may tax costs.  MCR 7.219.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

---

[3] Courts "ought not pass on questions of constitutionality . . . unless such adjudication is unavoidable."  *Spector Motor Serv v McLaughlin*, 323 US 101, 105; 65 S Ct 152; 89 L Ed 101 (1944).