*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES EDWARD FLAKES,

        Plaintiff-Appellant,

v

NEW MT. VERNON MISSIONARY BAPTIST
CHURCH,

        Defendant-Appellee.

UNPUBLISHED
October 22, 2019

No. 345988
Oakland Circuit Court
LC No. 2017-161202-CK

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

In this contract dispute, plaintiff, James Edward Flakes, appeals as of right an order granting defendant, New Mt. Vernon Missionary Baptist Church, summary disposition. Because the trial court erred in determining that the ecclesiastical abstention doctrine deprived it of subject-matter jurisdiction, we reverse the trial court's order and remand the matter for further proceedings.

## I. RELEVANT FACTS AND PROCEDURE

Plaintiff and defendant entered into an independent contractor agreement in 2009, according to which plaintiff agreed to perform various pastoral duties in exchange for compensation of $500 each week. The agreement prohibited changes unless mutually agreed upon in writing. In 2010, a majority of the members of defendant's congregation elected plaintiff as pastor. Plaintiff asserts that the parties entered into a new contract at this time, but he is unable to produce this contract because no discovery has occurred in this case. A "Certificate of Church Action to Terminate Services of James Flakes," dated and notarized on October 8, 2017, announced that a majority of the members of the congregation present at a vote on termination voted to terminate plaintiff as pastor.

Plaintiff filed an initial complaint on October 2, 2017. After various proceedings not relevant to the instant appeal, plaintiff filed an amended complaint by leave of the court on June 7, 2018, asserting breach of contract based primarily on allegations that defendant failed to pay his full weekly salary and other benefits owed between October 17, 2009 and October 8, 2017.

Defendant moved for summary disposition of plaintiff's first amended complaint pursuant to MCR 2.116(C)(7) and (C)(10). As is relevant here, defendant argued that plaintiff was, and remained, an independent contractor and that defendant had fully compensated plaintiff in accordance with the independent contractor agreement and any provisions in the church's constitution and bylaws entitling him to severance pay. Defendant also asserted that the ecclesiastical abstention doctrine barred plaintiff's claim. In response to defendant's motion for summary disposition, plaintiff reiterated that, at some point, he became an employee rather than an independent contractor and his salary changed accordingly. He also asserted that the ecclesiastical abstention doctrine was inapplicable because the court would not have to delve into ecclesiastical matters to determine whether defendant owed him compensation under the parties' agreement. In reply, defendant asserted that plaintiff's status never changed to that of employee, and that the clear and unambiguous language of the independent contractor agreement governed resolution of plaintiff's claim.

At the July 2018 hearing on defendant's motion for summary disposition, the parties mostly argued consistently with their briefs. Defendant insisted that the "crystal clear" terms of the independent contractor agreement governed the terms of plaintiff's engagement and compensation, and that the parties had not changed the terms of this agreement by mutual agreement in writing. Because the terms of the agreement are clear and unambiguous, it is not subject to judicial interpretation or the introduction of parol evidence, and it bars plaintiff's claim for additional compensation. Notably, defendant did not refer to the ecclesiastical abstention doctrine. Plaintiff argued that his was a simple claim for breach of contract and unpaid wages. Without the opportunity to conduct discovery, he could not say whether there was a written or oral change in his status that also entitled him to more pay. He agreed that the ecclesiastical abstention doctrine barred his initial claim, but it did not bar the claims set forth in his first amended complaint.

Following oral argument, the trial court granted defendant's motion for summary disposition based on its conclusion that it lacked subject-matter jurisdiction over the claims set forth in plaintiff's first amended complaint. The court reasoned, " 'When the claim involves the provision of the very services for which the organization enjoys First Amendment protection, then any claimed contract for such services . . . involves its ecclesiastical policies, outside the purview of civil law.' " quoting *Dlaikan v Roodbeen*, 206 Mich App 591, 593; 522 NW2d 719 (1994) (omission by the trial court), overruled by *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 330, 336; 901 NW2d 566 (2017). The trial court also relied on this Court's reasoning in *Speller v St. Stephen Lutheran Church of Drayton Plains*, unpublished per curiam opinion of the Court of Appeals, issued March 28, 2017 (Docket No. 330739). In a subsequent order, the court granted defendant's motion for summary disposition "for the reasons stated on the record." This appeal followed.

## II. ANALYSIS

Plaintiff argues on appeal that the trial court erred in concluding that it lacked subject-matter jurisdiction over plaintiff's claims because of the ecclesiastical abstention doctrine. We agree. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Weishuhn v Lansing Catholic Diocese*, 287 Mich App 211, 217; 787 NW2d 513 (2010).

As indicated above, Michigan's Supreme Court recently overruled *Dliakan* and other decisions that held that the ecclesiastical abstention doctrine was a limit on the circuit court's subject-matter jurisdiction.[1] *Winkler*, 500 Mich at 330. Addressing the origins and operation of the ecclesiastical doctrine, the Supreme Court explained:

> The ecclesiastical abstention doctrine arises from the Religion Clauses of the First Amendment of the United States Constitution and reflects this Court's longstanding recognition that it would be inconsistent with complete and untrammeled religious liberty for civil courts to enter into a consideration of church doctrine or church discipline, to inquire into the regularity of the proceedings to church tribunals having cognizance of such matters, or to determine whether a resolution was passed in accordance with the canon law of the church, except insofar as it may be necessary to do so, in determining whether or not it was the church that acted therein. Accordingly, we have consistently held that the court may not substitute its opinion in lieu of that of the authorized tribunals of the church in ecclesiastical matters, and that judicial interference in the purely ecclesiastical affairs of religious organizations is improper. [*Id*. at 337-338 (quotation marks and citations omitted).]

While the ecclesiastical abstention doctrine "operates to ensure that, in adjudicating a particular case, a civil court does not infringe the religious freedoms and protections guaranteed under the First Amendment[,]" it does not "purport to deprive civil courts of the right to exercise judicial power over any given class of cases." *Id*. at 339. "Subject-matter jurisdiction pertains to the court's abstract power over a class of cases, not to whether the facts of a particular case present a claim subject to the court's authority." *In re Complaint of Knox*, 255 Mich App 454, 457; 660 NW2d 777 (2003), citing *Traveler's Ins Co v Detroit Edison*, 465 Mich 185, 204; 631 NW2d 733 (2001). It is well established that Michigan's circuit courts are courts of general jurisdiction, with " 'original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Winkler*, 500 *Mich* at 334, quoting MCL 600.605, and citing Const 1963, art 6, § 1.

"By contrast, application of the ecclesiastical abstention doctrine is not determined by reference to the category or class of case the plaintiff has stated." *Winkler*, 500 Mich at 341. That a claim "is brought against a religious entity, or simply appears to be the sort that '*likely* involves ecclesiastical policies[,]' " is not dispositive. *Id*., quoting *Dlaikan*, 206 Mich App at

---

[1] *Speller* relied on *Pilgrims Rest Baptist Church v Pearson*, 310 Mich App 318, 323; 872 NW2d 16 (2015), which was overruled in *Winkler*, 500 Mich at 336, as were "other decisions" that "are inconsistent with [*Winkler's*] understanding of the [ecclesiastical abstention] doctrine," *id*. at 330. See also, *id*. at 340-341 (quotation marks and citation omitted) ("[W]hile some prior decisions such as *Dlaikan* have affixed the label of subject matter jurisdiction to the ecclesiastical abstention doctrine, we agree . . . that this characterization is a misnomer, and we disavow it.")

593 (emphasis added). What matters, according to our Supreme Court, "is whether the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions[.]" If a particular legal claim requires straying into questions involving religious doctrine or ecclesiastical policy, "the court must abstain from resolving those questions itself, defer to the religious entity's resolution of such questions, and adjudicate the claim accordingly." *Winkler*, 500 Mich at 341. Thus, proper application of the ecclesiastical abstention doctrine "requires a case-specific inquiry that informs how a court must adjudicate certain claims within its subject matter jurisdiction; it does not determine whether the court has such jurisdiction in the first place." *Id*.

In the present case, the trial court erred by relying on decisions that, after *Winkler*, were no longer good law to determine at the outset that it lacked subject-matter jurisdiction over plaintiff's contract claim, without determining to what extent, if any, resolution of the claim necessarily involved delving into ecclesiastical matters. As a court of general jurisdiction, the trial court in this matter has jurisdiction over plaintiff's contract claim; any application of the ecclesiastical abstention doctrine will determine *how* the court adjudicates the claim, but not *whether* it has the power to decide the claim. Because the trial court erred when it determined that the ecclesiastical abstention doctrine barred its exercise of jurisdiction over plaintiff's claim, we reverse the trial court's order that granted defendant's motion for summary disposition and remand the matter to the trial court. On remand, the court must first consider "whether and to what extent the adjudication of the legal and factual issues presented by the plaintiff's claim would require the resolution of ecclesiastical questions (and thus deference to any answers the church has provided to those questions)." *Id*. at 343.

Defendant contends that the "ministerial exception" operates to bar plaintiff's claims. Like the ecclesiastical abstention doctrine, the ministerial exception "has its roots in the First Amendment's guarantees of religious freedom and, generally, it 'bars any inquiry into a religious organization's underlying motivation for [a] contested employment decision.' " *Weishuhn*, 279 Mich App at 157, quoting *Petruska v Gannon Univ*, 462 F3d 294, 304 (CA 3, 2006). Application of the ministerial exception requires courts "to determine only whether the resolution of a plaintiff's claim would limit a religious institution's right to choose who will perform particular spiritual functions. *Weishuhn*, 279 Mich App at 174. The ministerial exception "does not apply to *all* employment decisions by religious institutions nor does it apply to *all* claims by ministers." *Id*.

Initially, plaintiff filed a complaint for declaratory relief, alleging that defendant wrongfully terminated him and barred his entry into the church, and asking the court to reinstate him and to enjoin dissident members of the congregation from preventing him from pastoring the church. Subsequently, defendant raised the ministerial exception in a motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Defendant argued that the exception barred the court from exercising subject-matter jurisdiction over plaintiff's claims because their adjudication would involve the resolution of ecclesiastical questions, such as whether sermons were scripturally and doctrinally sound. After amending his complaint, plaintiff conceded that the ministerial exception and the ecclesiastical abstention doctrine barred adjudication of the issues he raised in his original complaint, but argued that his first amended complaint raised only contract issues, and these did not involve ecclesiastical questions. The trial court did not decide

whether the ministerial exception applies to bar plaintiff's claim. In light of our remand of this matter, we will leave the issue to the trial court.

Defendant asks this Court to disregard the trial court's explanation for granting summary disposition based on the purported lack of subject-matter jurisdiction and argues that, although the court "inartfully expressed itself," its decision to grant summary disposition was actually premised solely on MCR 2.116(C)(7) and (C)(10). The trial court's statement that it was granting defendant's motion for summary disposition because it "lacks jurisdiction over the claims set forth in the amended complaint" belies defendant's contention. In addition, apart from merely asserting that we should see the trial court as having granted summary disposition pursuant to MCR 2.116(C)(7), defendant makes no effort to argue why summary disposition under (C)(7) is appropriate. "A party may not leave it to this Court to search for authority to sustain or reject its position." *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). Moreover, no discovery having occurred in this case, summary disposition pursuant to MCR 2.116(C)(10) is premature. See *Colista v Thomas*, 241 Mich App 529, 537; 616 NW2d 249 (2000) ("Generally, a motion for summary disposition under MCR 2.116(C)(10) is premature when discovery on a disputed issue has not been completed.").

Reversed and remanded. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola