# STATE OF MICHIGAN

# COURT OF APPEALS

---

PILGRIM'S REST BAPTIST CHURCH, a/k/a
PILGRIM'S REST MISSIONARY BAPTIST
CHURCH, NATHAN MAYFIELD, and
STEPHON BLACKWELL,

        Plaintiffs/Counter-Defendants-
        Appellees/Cross-Appellants,

v

ARTHUR PEARSON, SR.,

        Defendant/Counter-Plaintiff-
        Appellant/Cross-Appellee.

FOR PUBLICATION
April 23, 2015
9:00 a.m.

No. 318797
Kent Circuit Court
LC No. 11-012242-CZ

---

PILGRIM REST MISSIONARY BAPTIST
CHURCH, JESSIE OSBY, ARTIS OSBY,
JENNIFER CUMMINGS, JEFFREY
CUMMINGS, SCOTTY PEARSON, JR.,
LAFOYA PEARSON, MARY WILLIAMS,
ANDREW WILLIAMS, HAYWOOD WARE,
CHRISTINA DEAN, SHARON ASHFORD,
GLORIA SALLIE, JESSIE SALLIE, WAYNE
PEARSON, and KEON PEARSON,

        Plaintiffs/Counter-Defendants-
        Appellants/Cross-Appellees,

and

FELISHA TODD, ALEONE SIMMS, LORENZO
PEARSON, KEAYSHA McDONALD, SANDRA
BENTLEY, MAMIE RAYBON, JUSTIN
CUMMINGS, EDNA WILLIAMS, DEENA
KING, FLORIDA PARNELL, KENDRA
THOMAS, BONNIE SMITH, SEAF SMITH,
ALVIS HOLSEY, ANDREA HOLSEY,
MARQUITER RANDLE, GEORGE WEAVER,
JR., LOUISE MILLER, APRIL JACKSON,
BESSIE CARTER, RHONDA LEE, BRENDA

-1-

LAIRD, IVY WINBRUSH, JUNIOUS JOSEPH, ELLA JOSEPH, EARLY JOHNSON, OLIVER JOHNSON, JOYCE GUEST, ALSIE WILKINS, MILDRED BURRIS, BRENDA DOBBS, DORIS BECK, ANTHONY COLEMAN, YVONNE COLEMAN, EVELYN WALKER, TOY McNEAL, LATASHA RANDLE, ZELDA FORD, JOHARI GUEST, JACKIE SMITH, CHARLOTTE BECKFORD, DEUARDO BECKFORD, MABLE WILLIAMS, KISHA WINTERS, KAQUISHA WINTERS, SHANIQUA WINTERS, KENWIN WINTERS, JR., and ARSENIO THOMAS,

        Plaintiffs-Appellants/Cross-Appellees,

v

NATHAN MAYFIELD, MARY ANNE BEATTIE, LYDIA LEE, CURTIS McGHEE, and DOT McMILLIAN,

        Defendants-Appellees/Cross-Appellants,

and

STEPHON BLACKWELL, WILLIAM BLUNT, JOE DAVIS, REGIS FISHER, MANUEL MARTIN, DONALD MOSLEY, and MARY STATEN,

        Defendants/Counter-Plaintiffs-Appellees/Cross-Appellants.

No. 319571
Kent Circuit Court
LC No. 12-005176-CZ

---

Before: METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 318797, Defendant/Counter-Plaintiff-Appellant/Cross-Appellee Pearson (defendant Pearson) appeals the trial court's October 7, 2013 order dismissing his counterclaims under MCR 2.116(C)(8) for being non-justiciable. Plaintiffs/Counter-Defendants-Appellees/Cross-Appellants Pilgrim's Rest Baptist Church, Nathan Mayfield, and Stephon Blackfield (plaintiffs) cross-appeal the same order which also dismissed their claims under MCR 2.116(C)(8) for being non-justiciable. In consolidated case, Docket No. 319571, Plaintiffs/Counter-Defendants-Appellants/Cross-Appellees and Plaintiffs-Appellants/Cross-

-2-

Appellees (collectively referred to as "pastor's supporters") appeal the trial court's November 21, 2013 order that dismissed their claims under MCR 2.116(C)(8). The consolidated case Defendants-Appellees/Cross-Appellants and Defendants/Counter-Plaintiffs-Appellees/Cross-Appellants (collectively referred to as "pastor's opponents") cross-appeal the same order. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff Pilgrim's Rest Baptist Church is an ecclesiastical corporation. In 2011, defendant Pearson was the pastor and president of plaintiff Pilgrim's Rest Baptist Church. In April of 2011, the board of trustees and board of deacons became aware of defendant Pearson's authorizing a raise for himself. Between July 6, 2011, and October 13, 2011, defendant Pearson admitted numerous times to giving himself raises, using church credit cards for non-church purposes, and paying monetary honorariums to himself, all without either board's approval or authorization.

After the October 13, 2011 meeting, plaintiffs Blackwell and Mayfield hired Plante Moran to analyze the church finances. On Sunday October 31, 2011, the board of trustees and the deacon board gave public notice to the congregation of Pilgrim's Rest of the status of the investigation of defendant Pearson and of a November 13, 2011 vote to terminate defendant Pearson's employment. At this vote, members voted to retain defendant Pearson as pastor. When the accusations against defendant Pearson arose, the church members began to take sides and formed a pro-defendant Pearson faction and an anti-defendant Pearson faction.

On December 23, 2011, Plante Moran issued a preliminary finding report that demonstrated that, between 2008 and 2010, over $237,000 was removed from plaintiff Pilgrim's Rest Baptist Church's bank accounts through questionable transactions. The majority of these transactions were for the benefit of defendant Pearson, defendant Pearson's wife, and a former church secretary. On December 27, 2011, the trustee board, allegedly exercising its right as board of directors, voted to suspend defendant Pearson with pay. On December 30, 2011, the Kent County Prosecutor's office authorized an arrest warrant for defendant Pearson on one count of embezzlement. Defendant Pearson was later found guilty of embezzlement greater than $50,000 but less than $100,000 after he pleaded nolo contendere, and defendant Pearson was ordered to pay restitution.

On January 1, 2012, pastor's supporters held a board of directors meeting, at which they claim pastor's opposition maliciously tried to break up the vote for a board of directors. Pastor's opposition question the legitimacy of the board of directors that were voted in by the pastor's supporters. After this meeting, two boards of directors each began asserting that it was the legitimate board of directors.

The trial court concluded that all the claims from both cases were non-justiciable under MCR 2.116(C)(8) because of the ecclesiastical abstention doctrine. On appeal, the parties address the merits of the claims. To the extent that the claims are non-justiciable, the argument on the merits is irrelevant. To the extent that the claims are justiciable, it is proper that the merits on those claims be addressed first by the trial court, and not this Court. Therefore, this Court will only address whether the claims are justiciable, and we will not address the merits of the claims.

"Whether subject-matter jurisdiction exists is a question of law for the court." *Dep't of Natural Res v Holloway Constr Co*, 191 Mich App 704, 705; 478 NW2d 677 (1991). "Accordingly, the issue is reviewed de novo." *Id.*

"It is well settled that courts, both federal and state, are severely circumscribed by the First and Fourteenth Amendments to the United States Constitution and art 1, § 4 of the Michigan Constitution of 1963 in resolution of disputes between a church and its members." *Maciejewski v Breitenbeck*, 162 Mich App 410, 413-414; 413 NW2d 65 (1987). "Such jurisdiction is limited to property rights which can be resolved by application of civil law." *Id.* at 414. "Whenever the court must stray into questions of religious doctrine or ecclesiastical polity the court loses jurisdiction." *Id.* "Religious doctrine refers to ritual, liturgy of worship and tenets of the faith." *Id.* "Polity refers to organization and form of government of the church." *Id.* "Under the ecclesiastical abstention doctrine, apparently derived from both First Amendment religion clauses, 'civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity.'" *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000) (footnote omitted), quoting *Paul v Watchtower Bible & Tract Society*, 819 F2d 875, 878 n 1 (CA 9, 1987).

Defendant Pearson's counterclaims include breach of contract, promissory estoppel and unjust enrichment, fraud, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy. But, all of defendant Pearson's claims as pleaded make reference to the employment contract between defendant Pearson and the church. We affirm the trial court's summary disposition of these claims. "When the claim involves the provision of the very services . . . for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Dlaikan v Roodbeen*, 206 Mich App 591, 593; 522 NW2d 719 (1994).

Defendant Pearson relies upon *Vincent v Raglin,* 114 Mich App 242; 318 NW2d 629 (1982), for the proposition that if it was not the "action of the church," the ministerial exception and ecclesiastical abstention doctrine are inapplicable. Defendant Pearson's reliance on *Vincent* is misplaced because the Court in *Vincent* simply determined whether the church had taken a certain course of action, and here the determination would be whether the church exceeded its authority in acting, which is non-justiciable because it would require the court to determine if the church violated its own polity.

Therefore, because determining whether the board of trustees had the authority to suspend and eventually terminate defendant Pearson would require determinations of religious polity, the civil courts do not have jurisdiction. Additionally, the claims brought by defendant Pearson involve the provision of his services as pastor to the church, which is the essence of the church's constitutionally protected function, and "any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Dlaikan*, 206 Mich App at 593. The trial court's summary disposition is affirmed in regard to defendant Pearson's claims.

Plaintiffs plead no express tort, but the pleadings for money damages seem to imply conversion as the underlying tort by which plaintiffs request money damages. A claim of conversion against an individual facially does not cause the court to "stray into questions of religious doctrine or ecclesiastical polity[,]" which is where the court would lose jurisdiction.

-4-

*Maciejewski*, 162 Mich App at 413-414. Because the claim likely does not require the trial court to determine the issue based on religious doctrine or ecclesiastical polity, the claim is likely not barred by the ecclesiastical abstention doctrine. Additionally, defendant Pearson has failed to raise an affirmative defense that "necessarily entails an excursion into ecclesiastical polity." *Dlaikan*, 206 Mich App at 594. Therefore, plaintiffs' claim for conversion is justiciable.

Additionally, defendant Pearson's claim that plaintiffs' civil action is barred as a prior judgment is an incorrect statement of law. "A restitution order as a condition of probation pursuant to MCL 771.3(2)(d); MSA. 28.1133(2)(d) in a criminal case does not act as a bar to the recovery of damages in a civil action arising out of the same incident." *Aetna Cas & Sur Co v Collins*, 143 Mich App 661, 663; 373 NW2d 177 (1985). Therefore, summary disposition would not be proper as a prior judgment, MCR 2.116(C)(7), because an order of restitution does not prohibit plaintiffs from filing a civil action.

Pastor's supporters' claims involve membership, property rights of the members, and issues of control of the church. "The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively." *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979). "[T]he First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." *Id*. Pilgrim's Rest is a "strictly congregational or independent organization, governed solely within itself[.]" *Watson*, 80 US at 724-725. Since it is a congregational or independent organization, "the dispute is governed '"by the ordinary principles which govern voluntary associations[.]"'" *Chabad-Lubavitch of Mich v Schuchman*, 305 Mich App 337, 351; 853 NW2d 390, 398 (2014), quoting *Bennison v Sharp*, 121 Mich App 705, 714; 329 NW2d 466 (1982), quoting *Watson v Jones*, 80 US 679, 726; 20 L Ed 666 (1871). "In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations." *Watson*, 80 US at 725.

Therefore, unless the determination under the ordinary principles of voluntary associations would require interpretation of religious doctrine and religious polity, the court has jurisdiction to hear the claims brought by the pastor's supporters. However, if a defense to one of the claims leads the court to "stray into questions of religious doctrine or ecclesiastical polity," the court loses jurisdiction. *Maciejewski*, 162 Mich App at 414.

Pastor's opponents brought a claim of conversion against pastor's supporters for collecting funds in the name of the church, opening a bank account in the name of the church, and using those funds. In essence this is a claim between two parties that they both are the sole owner of approximately $14,623.46 worth of donations that have been deposited into a bank account opened by the pastor's supporters. Because the claim does not require the trial court to determine the issue based on religious doctrine or ecclesiastical polity, the claim is not barred by the ecclesiastical abstention doctrine. The trial court could easily resolve this question because it is a matter of determining to which donee the donor of the money intended to make the donation. This determination sounds entirely in property law and does not delve into questions of religious doctrine or ecclesiastical polity, and therefore, the claim is justiciable.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. In Docket No. 318797, plaintiffs may tax costs. In Docket No. 319571, no costs, no party having prevailed in full.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Mark T. Boonstra