# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHAD SPELLER,

      Plaintiff-Appellant,

v

SAINT STEPHEN LUTHERAN CHURCH OF
DRAYTON PLAINS, CLARK BEEBE, DAVID
MAIER, and MICHIGAN DISTRICT OF
LUTHERAN CHURCH-MISSOURI SYNOD,

      Defendants-Appellees.

UNPUBLISHED
March 28, 2017

No. 330739
Oakland Circuit Court
LC No. 2015-147183-CZ

---

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's orders granting defendants' motions for summary disposition under MCR 2.116(C)(4) and (C)(10). Pursuant to the ecclesiastical abstention doctrine, we affirm.

Plaintiff is an ordained minister of the Lutheran Church-Missouri Synod ("the LCMS") and was the senior pastor of Saint Stephen Lutheran Church of Drayton Plains ("St. Stephen"). He filed an eight-count complaint against St. Stephen, Clark Beebe (a member of St. Stephen's board of directors), the Michigan District of the LCMS, and Reverend David Maier (the president of the Michigan District LCMS). Plaintiff challenges defendants' alleged wrongful conduct in attempting to oust him as St. Stephen's pastor through forced resignation, which he claims led to his "blacklisting" in the church and an inability to practice his profession as a Lutheran pastor. He asserts that defendants' wrongful conduct brought about his placement on "restricted status" on the LCMS synodical roster and caused damage to his reputation in the congregation and the LCMS, along with embarrassment, humiliation, mental pain and suffering, loss of employment, and monetary loss. Pursuant to defendants' motions for summary disposition brought under MCR 2.116(C)(4) and (C)(10), the trial court dismissed plaintiff's complaint on the basis that it lacked subject-matter jurisdiction over his claims, concluding that the court could not interfere in matters of ecclesiastical polity by determining whether defendants acted appropriately in handling plaintiff's employment.

On appeal, plaintiff argues that the trial court erred in summarily dismissing his complaint against defendants. We review de novo a trial court's decision on a motion for summary disposition, *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010), whether subject-matter jurisdiction exists, *Pilgrim's Rest Baptist Church v Pearson*, 310 Mich App 318, 323; 872 NW2d 16 (2015), and issues of constitutional law, *Weishuhn v Catholic Diocese of Lansing (After Remand)*, 287 Mich App 211, 218; 787 NW2d 513 (2010). MCR 2.116(C)(4) provides for summary disposition when a "court lacks jurisdiction of the subject matter[,]" while MCR 2.116(C)(10) allows for summary disposition when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law."

"The First Amendment provides, in part, that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' " *Hosanna-Tabor Evangelical Lutheran Church & Sch v EEOC*, 565 US 171, 181; 132 S Ct 694; 181 L Ed 2d 650 (2012); see also *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 156; 756 NW2d 483 (2008), citing US Const, Am I. "The First Amendment applies to the states through the Fourteenth Amendment." *Weishuhn*, 279 Mich App at 156 (citation omitted). The First Amendment's Free Exercise Clause "protects a religious group's right to shape its own faith and mission through its appointments" of religious ministers, and the Establishment Clause "prohibits government involvement in . . . ecclesiastical decisions." *Hosanna-Tabor*, 565 US at 188-189; see also *Weishuhn*, 279 Mich App at 156-157. The government generally may not take action that interferes with the internal governance of a church. *Hosanna-Tabor*, 565 US at 188-189, 194-196.

In *Pilgrim's Rest*, 310 Mich App at 323-324, this Court set forth various principles associated with the ecclesiastical abstention doctrine, observing:

> It is well settled that courts, both federal and state, are severely circumscribed by the First and Fourteenth Amendments to the United States Constitution and art 1, § 4 of the Michigan Constitution of 1963 in resolution of disputes between a church and its members. Such jurisdiction is limited to property rights which can be resolved by application of civil law. Whenever the court must stray into questions of religious doctrine or ecclesiastical polity the court loses jurisdiction. Religious doctrine refers to ritual, liturgy of worship and tenets of the faith. Polity refers to organization and form of government of the church. Under the ecclesiastical abstention doctrine, apparently derived from both First Amendment religion clauses, civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity. [Citations and quotation marks omitted.]

Plaintiff argues that his claims can be resolved by applying neutral principles of law and without considering matters of ecclesiastical doctrine or polity. We disagree. In *Pilgrim's Rest*, a dispute arose in the congregation between the pastor's supporters and opponents with respect to whether to retain him as their pastor after it was discovered that he had authorized a raise for himself, used church credit cards, and paid himself monetary honorariums without the authorization of the board. After an investigation revealed that he had allegedly embezzled

funds from the church, the board suspended the pastor. *Pilgrim's Rest*, 310 Mich App at 321-322. This Court concluded that the plaintiff church's claim of conversion was justiciable because it likely did not require the court to resolve the issue based on religious doctrine or polity. *Id.* at 325. But the Court concluded that dismissal of the pastor's counterclaims of breach of contract, fraud, tortious interference with a contract, intentional infliction of emotional distress, and civil conspiracy was proper, where the pleadings referred to the employment contract between the pastor and the church and involved "the provision of his services as pastor to the church, which is the essence of the church's constitutionally protected function." *Id.* at 324-325, 327.

We also find instructive decisions of the United States Court of Appeals for the Sixth Circuit in *Hutchison v Thomas*, 789 F2d 392 (CA 6, 1986), and *Lewis v Seventh Day Adventists Lake Region Conference*, 978 F2d 940 (CA 6, 1992). In *Hutchison*, a minister brought a lawsuit against his church challenging his forced retirement. He alleged fraud and misrepresentation, defamation, intentional infliction of emotional distress, and breach of contract, claiming that the defendants had improperly applied provisions of the church rules and law, misrepresented the minister's relationships at various churches, and "misled and misguided various units of the denomination in bringing about his early retirement." *Hutchison*, 789 F2d at 392-393. The federal court affirmed the dismissal of the plaintiff's complaint, concluding that he effectively sought "civil court review of subjective judgments made by religious officials and bodies," which the court could not constitutionally intervene in. *Id.* at 393. The Sixth Circuit further explained:

> The "neutral principles" doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be. The claim here relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law. [*Id.* at 396 (citation omitted).]

Similarly, in *Lewis*, a minister brought a lawsuit against his church after he was terminated following a dispute regarding his handling of church finances and his conduct as the personal representative of an estate to which both the minister and the church were devisees. The minister alleged claims of breach of contract, promissory estoppel, and intentional infliction of emotional distress. *Lewis*, 978 F2d at 941. Relying on *Hutchison*, the Sixth Circuit affirmed the dismissal of the minister's complaint, holding:

> We conclude that the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy. Even when, as here, the plaintiff alleges that the religious tribunal's decision was based on a misapplication of its own procedures and laws, the civil courts may not intervene. [*Id.* at 942-943.]

Applying these principles here, we likewise conclude that the trial court lacked subject matter jurisdiction over plaintiff's complaint, which similarly involves claims brought by a minister against his church and church members and focuses on his status and employment as the

-3-

pastor of St. Stephen, his presence on the synodical roster, and the alleged wrongful treatment by members of his church in an effort to oust him. His tort and breach of contract claims arose in the context of St. Stephen's decision whether to retain plaintiff as its pastor and the LCMS and Reverend Maier's decision whether to retain plaintiff as a minister on the LCMS synodical roster. Resolution of these claims would necessarily require the trial court to inquire into the propriety of those decisions and defendants' conduct relative to those decisions, which clearly relate to internal church matters, including church discipline, church governance, and plaintiff's employment as a Lutheran pastor. These issues would require the court to impermissibly stray into ecclesiastical polity.

When addressing claims in a complaint, this Court must examine the substance and effect of the complaint and not its emblemata. *Dlaikan v Roodbeen*, 206 Mich App 591, 593; 522 NW2d 719 (1994). First, we affirm the trial court's summary dismissal of plaintiff's breach of contract claim. This claim is based on defendants' alleged wrongful conduct in violating the protocol set forth in the church constitution and bylaws, which plaintiff asserts governs his employment with the church. Plaintiff alleges that defendants violated the constitution by discussing his employment situation as St. Stephen's pastor without giving the requisite prior notice to the church members or following the requisite protocol to remove a pastor by vote of the members, instead attempting to force him to resign. He asserts that these violations caused, among other damages, his placement on "restricted status" on the LCMS synodical roster, thereby preventing him from practicing as a Lutheran minister. To resolve this claim, the trial court would be required to determine if the church violated its own constitution and protocol, thereby impermissibly engaging in and interfering with matters of ecclesiastical polity. *Pilgrim's Rest*, 310 Mich App at 323-325; see also *Dlaikan*, 206 Mich App at 594; *Vincent v Raglin*, 114 Mich App 242, 252; 318 NW2d 629 (1982); *Lewis*, 978 F2d at 942-943. Further, the court would be required to probe into the LCMS's disciplinary determination to ascertain whether the alleged breach led to plaintiff's placement on "restricted status" on the synodical roster, clearly implicating issues of internal ecclesiastical governance and law. "[C]ivil courts may not redetermine the correctness of . . . some decision relating to government of the religious polity." *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000) (quotation marks and citation omitted). "The First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy." *Lewis*, 978 F2d at 942. Significantly, a claim, as here, involving "the provision of [plaintiff's] services as pastor to the church" or a minister's employment relationship with a church, encompasses the very "essence of the church's constitutionally protected function." *Pilgrim's Rest*, 310 Mich App at 325. Such internal matters, pertaining to a pastor's employment, involve ecclesiastical concerns dependent on "internal church discipline, faith and organization" that the civil courts may not interfere in. *Hutchison*, 789 F2d at 396; see also *Pilgrim's Rest*, 310 Mich App at 324 (causes of action based on claimed contract for pastoral services likely involve ecclesiastical policies that are outside the purview of civil law); *Dlaikan*, 206 Mich App at 593-594 (distinguishing between contract rights involving ecclesiastical matters and contracts entered into by a church with the secular world, such as a contract to repair the church roof). We conclude that plaintiff's contract claim cannot be resolved without straying into ecclesiastical polity, and thus, the trial court lacked subject matter jurisdiction over the claim.

We likewise affirm the trial court's summary dismissal of plaintiff's claim alleging a breach of fiduciary duty. The allegations pertaining to this claim derive from the church constitution and bylaws, which establish the church's board of directors and define its duties, self-governing policies, and responsibilities to each other and members of the congregation. Resolution of this claim, therefore, also implicates matters of church governance and organization, plaintiff's employment as pastor at St. Stephen, and his relationship with the board of directors, all of which entail ecclesiastical polity that the court cannot intervene in. *Pilgrim's Rest*, 310 Mich App at 323-325; *Dlaikan*, 206 Mich App at 593-594. A civil court is prohibited from determining whether a church violated its own policies or protocol. *Pilgrim's Rest*, 310 Mich App at 324; *Dlaikan*, 206 Mich App at 594; *Lewis*, 978 F2d at 942-943. And, whenever, as in this case, a court would have to "stray into" questions of ecclesiastical polity to resolve a civil claim, it loses its jurisdiction. *Pilgrim's Rest*, 310 Mich App at 323-325, 327.

We also affirm the trial court's summary dismissal of plaintiff's tort claims. His tort claims arise out of the allegedly false, defamatory, and misleading statements made by defendants in internal church letters about plaintiff's intent to resign as pastor, his "struggles" as a pastor, and his alleged lack of honesty about his dependence on prescription pain killers. Plaintiff asserts that these statements placed him in a false light and were made with malicious intent, caused damage to his reputation, humiliation, embarrassment, and monetary loss, and led to his placement on "restricted status" on the LCMS synodical roster, thereby preventing him from practicing as a Lutheran pastor. Reviewing the substance and effect of these claims, we conclude that they could not be resolved without straying into matters of ecclesiastical polity.

Resolution of plaintiff's claims of fraud/misrepresentation, false light invasion of privacy, and defamation would necessarily require the court to inquire into the truth or falsity of the challenged statements as well as defendants' intent in making them. Such inquiry would require the court to delve into: plaintiff's status and employment as the senior pastor at St. Stephen and his "struggles" as pastor; internal church disciplinary matters, including plaintiff's placement on "restricted status" on the synodical roster and the reasons underlying the decision; his relationship with St. Stephen's governing board, the congregation, and the LCMS, including internal church communications regarding whether he agreed to resign as pastor; and the appropriateness of defendants' conduct relating to the matter of "forcing" plaintiff to resign as the pastor of St. Stephen. Inquiry into these claims would require the court to impermissibly stray into plaintiff's employment as a minister and other internal matters concerning the ecclesiastical governance of St. Stephen and the LCMS. The alleged false statements supporting plaintiff's tort claims were not made independent of religious governance, but were made to the members of the church congregation in letters, at a Voter's meeting, and in a letter between plaintiff and Reverend Maier, the President of the Michigan District of the LCMS, all concerning the internal church matter of plaintiff's status and employment as St. Stephen's pastor and as a minister of the LCMS.[1] As discussed earlier, claims involving "the provision of [plaintiff's]

---

[1] Although plaintiff states in his brief on appeal that "[d]efendants published their defamatory communications beyond the individual congregation," his complaint factually alleges that the

services as pastor to the church" encompass the very "essence of the church's constitutionally protected function." *Pilgrim's Rest*, 310 Mich App at 325. The court cannot intervene in an internal church dispute relating to plaintiff's status and employment as a minister of the church and involving "internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom and law." *Hutchison*, 789 F2d at 396. Because the trial court would likely be required to "stray into" matters of religious polity to resolve these tort claims, we conclude that it lacks jurisdiction over them. *Pilgrim's Rest*, 310 Mich App at 323-325; *Dlaikan*, 206 Mich App at 593-594.

Resolution of plaintiff's claim of intentional infliction of emotional distress, which was based on the alleged false, misleading, and defamatory statements relied on by plaintiff in support of the underlying torts, likewise implicates matters of ecclesiastical polity and thus fails for the same reasons that the other tort claims failed. *Pilgrim's Rest*, 310 Mich App at 323-325.

Finally, summary dismissal of plaintiff's claims of civil conspiracy and concert of action was proper. " 'A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.' " *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), quoting *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). Likewise, "[i]n order to prove a claim of concert of action, the plaintiff must show that all defendants acted tortiously, pursuant to a common design[.]" *Jodway v Kennametal, Inc*, 207 Mich App 622, 631; 525 NW2d 883 (1994) (quotation marks and citation omitted). Plaintiff's claims allege that defendants "illegally, maliciously, and wrongfully" conspired with one another with the intent to place plaintiff in a false light before the congregation, defame him, ruin his reputation, and to force him to resign. As discussed above, the underlying tort claims cannot be resolved without considering matters of ecclesiastical polity. It follows that plaintiff's claims of conspiracy and concert of action, which are based on these underlying claims, would also require the court to stray into ecclesiastical polity, and thus the court likewise cannot assert its jurisdiction over these claims. *Pilgrim's Rest*, 310 Mich App at 323-325.

Reviewing the substance and effect of plaintiff's claims, we conclude that they involve matters of ecclesiastical polity. Plaintiff's complaint essentially presents an internal church dispute between the church and plaintiff relating to his status and employment as St. Stephen's pastor and as a Lutheran minister on the LCMS synodical roster. His claims implicate his employment contract with the church and his membership in the LCMS, the church's constitution and bylaws, subjective judgments of religious officials and governing bodies concerning his performance as pastor, defendants' alleged wrongful conduct in attempting to circumvent the church rules to oust him as pastor, internal church communications regarding his status and employment as pastor, and the disciplinary action taken against plaintiff by the church. Resolution of these claims would necessarily require the court to stray into matters of internal church governance and discipline, which are not subjects over which a civil court has

letters were published to the congregation and the Voter's assembly, who would ultimately vote on plaintiff's removal as pastor and consists of members of the congregation.

jurisdiction. *Pilgrim's Rest*, 310 Mich App at 323-325; *Lewis*, 978 F2d at 942; *Hutchinson*, 789 F2d at 396. The trial court properly granted summary disposition in favor of defendants on the basis of the ecclesiastical abstention doctrine.

Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs pursuant to MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause