# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

WINKLER v MARIST FATHERS OF DETROIT, INC

Docket No. 152889. Argued on application for leave to appeal April 13, 2017. Decided June 27, 2017.

Bettina Winkler brought an action in the Oakland Circuit Court, alleging that Marist Fathers of Detroit, Inc., denied her admission to its high school because of her learning disability, in violation of MCL 371.1402 of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 371.1101 *et seq*. Plaintiff attended the middle school division of Notre Dame Preparatory High School and Marist Academy, but defendant denied her admission to the high school division of its school. Defendant moved for summary disposition under MCR 2.116(C)(4) and (10), arguing that under the ecclesiastical abstention doctrine, the circuit court lacked subject-matter jurisdiction to review the admission decision of a religious school, that the PWDCRA does not apply to religious schools, and that even if the act did apply to defendant, there was no genuine dispute that defendant's decision was based on plaintiff's academic record, not her learning disability; plaintiff sought a preliminary injunction. The court, Rudy J. Nichols, J., denied defendant's (C)(4) motion, concluding that it had subject-matter jurisdiction over plaintiff's PWDCRA claim. The court also denied defendant's (C)(10) motion, reasoning that it was premature because discovery had just started and that plaintiff had failed to establish that the PWDCRA does not apply to religious schools. The court also denied plaintiff's request for a preliminary injunction. Defendant appealed. In an unpublished per curiam opinion issued November 12, 2015 (Docket No. 323511), the Court of Appeals, SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ., reversed the trial court's order and remanded the case to the trial court for entry of summary disposition in favor of defendant under MCR 2.116(C)(4). Relying on *Dlaikan v Roodbeen*, 206 Mich App 591 (1994), the Court of Appeals concluded that under the First Amendment, the trial court lacked subject-matter jurisdiction to review defendant's admission decision, reasoning that courts may not analyze the decision-making process of a religious institution. The Court of Appeals accordingly declined to address defendant's argument that the PWDCRA does not apply to religious schools and defendant's remaining (C)(10) arguments that were not resolved by the trial court. Plaintiff sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant plaintiff's application for leave to appeal or take other action, and it directed the parties to address: (1) whether the doctrine of ecclesiastical abstention involves a question of a court's subject-matter jurisdiction over a complaint, (2) whether the Court of Appeals correctly concluded that consideration of plaintiff's challenge to defendant's admission decision would have impermissibly entangled the

trial court in questions of religious doctrine or ecclesiastical polity, and (3) whether the Supreme Court should overrule *Dlaikan*, and if so on what basis. 500 Mich 888 (2016).

In a unanimous opinion by Justice McCormack, in lieu of granting leave to appeal, the Supreme Court *held*:

The ecclesiastical abstention doctrine informs how a civil court must adjudicate claims within its subject-matter jurisdiction that involve ecclesiastical questions; it does not operate to divest courts of subject-matter jurisdiction over such claims. *Dlaikan* was overruled to the extent it held otherwise.

1. Subject-matter jurisdiction is the right of a court to exercise judicial power over a certain class of cases; the court's jurisdiction is not dependent on the particular facts of a case or whether a plaintiff has a cause of action. MCL 600.605 provides that Michigan circuit courts are courts of general jurisdiction, and those courts have original jurisdiction to hear and determine all civil claims and remedies, with the exception of when exclusive jurisdiction is given in the constitution or by statute to some other court or when circuit courts are denied jurisdiction by Michigan's 1963 Constitution or Michigan statutes. Accordingly, circuit courts have subject-matter jurisdiction over claims of discrimination under the PWDCRA.

2. The ecclesiastical abstention doctrine, which arises from the Religion Clauses of the First Amendment of the United States Constitution, prohibits a civil court from substituting its opinion for that of the authorized tribunal of a religious entity in ecclesiastical matters, or from otherwise judicially interfering in the purely ecclesiastical affairs of a religious entity. While the doctrine thus ensures that a civil court, when adjudicating a particular case, does not infringe on the religious freedoms and protections guaranteed under the First Amendment, it does not deprive civil courts of the right to exercise judicial power over any given class of cases. In other words, the ecclesiastical abstention doctrine does not divest courts of jurisdiction over every claim or case involving an ecclesiastical question. Instead, the doctrine requires a case-specific inquiry that informs how a court must adjudicate claims within its subject-matter jurisdiction that involve such questions; it is not applied to determine whether the court has subject-matter jurisdiction over those claims in the first place. In this case, the ecclesiastical abstention doctrine did not divest the trial court of subject-matter jurisdiction to hear plaintiff's PWDCRA claim; the court has judicial power to consider and dispose of the claim in a manner consistent with First Amendment guarantees. Accordingly, the Court of Appeals erred by reversing the trial court's order and remanding for entry of summary disposition in favor of defendant under MCR 2.116(C)(4). To the extent *Dlaikan* and other cases hold that the ecclesiastical abstention doctrine affects a court's subject-matter jurisdiction over a particular case, those decisions are overruled.

Court of Appeals judgment reversed and the case remanded to the Court of Appeals for consideration of defendant's argument that the PWDCRA does not apply to its school.

©2017 State of Michigan

# OPINION

Chief Justice:       Justices:
Stephen J. Markman    Brian K. Zahra
                      Bridget M. McCormack
                      David F. Viviano
                      Richard H. Bernstein
                      Joan L. Larsen
                      Kurtis T. Wilder

FILED June 27, 2017

STATE OF MICHIGAN

SUPREME COURT

BETTINA WINKLER, by her next friends
HELGA DAHM WINKLER and MARVIN
WINKLER,

        Plaintiff-Appellant,

v                                                No. 152889

MARIST FATHERS OF DETROIT, INC.,
d/b/a NOTRE DAME PREPARATORY
HIGH SCHOOL AND MARIST
ACADEMY,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

McCORMACK, J.

When presented with an ecclesiastical question, civil courts have long recognized the need, grounded in the First Amendment, to abstain from answering it themselves. This case invites us to consider the nature of this ecclesiastical abstention doctrine: namely, whether it is properly understood as a limitation on the subject matter

jurisdiction of civil courts. The defendant operates a parochial school to which the plaintiff was denied admission. When the plaintiff sued on the basis of disability discrimination, the defendant moved for summary disposition, arguing among other things that, under the ecclesiastical abstention doctrine, the circuit court lacked subject matter jurisdiction over her claim. Central to the defendant's argument was *Dlaikan v Roodbeen*, 206 Mich App 591; 522 NW2d 719 (1994), which applied the doctrine to conclude that a circuit court had no such jurisdiction over a challenge to the admissions decisions of a parochial school. The circuit court denied the defendant's motion. The Court of Appeals, however, was convinced by the defendant's jurisdictional argument and reversed the circuit court, awarding the defendant summary disposition under MCR 2.116(C)(4).

We disagree with this determination. While *Dlaikan* and some other decisions have characterized the ecclesiastical abstention doctrine as depriving civil courts of subject matter jurisdiction, it is clear from the doctrine's origins and operation that this is not so. The ecclesiastical abstention doctrine may affect how a civil court exercises its subject matter jurisdiction over a given claim; it does not divest a court of such jurisdiction altogether. To the extent *Dlaikan* and other decisions are inconsistent with this understanding of the doctrine, they are overruled. We therefore reverse the Court of Appeals' award of summary disposition to the defendant under MCR 2.116(C)(4), and we remand to that Court for further proceedings.

I

The defendant, Marist Fathers of Detroit, Inc., operates Notre Dame Preparatory High School and Marist Academy (NDPMA), a private, Catholic school in Oakland

2

County. The plaintiff, Bettina Winkler, is a young woman who attended the middle-school division of NDPMA, but was denied admission to its high school. Believing this decision was based on her learning disability, dyslexia, the plaintiff filed suit, alleging that the defendant violated MCL 37.1402 of the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*[1] Motions ensued, with the plaintiff requesting a preliminary injunction and the defendant seeking summary disposition under MCR 2.116(C)(4) and (C)(10). As is relevant here, the defendant argued that, under the ecclesiastical abstention doctrine—and, more specifically, its application in *Dlaikan*—the circuit court could not exercise subject matter jurisdiction over a challenge, such as the plaintiff's, to the admissions decision of a religious school. The defendant further argued that the plaintiff had failed to state a claim because the PWDCRA does not apply to religious schools and, even if it did, the record betrayed no genuine dispute that the defendant's admissions decision was based on the plaintiff's lack of academic qualification, not her disability.

The circuit court denied the defendant's motion under MCR 2.116(C)(4), concluding it had subject matter jurisdiction over the plaintiff's PWDCRA claim and observing, in support, that the

> [d]efendant cites no canon law or religious doctrine governing its admissions conditions; indeed, its reasons appear to be otherwise secular ones involving Plaintiff's grades, high school placement test results and teacher evaluations. No rituals, liturgy of worship or tenets of faith appear to have been involved in its decision. Moreover, [the d]efendant cites

---

[1] The plaintiff's complaint also stated claims for tortious fraud or misrepresentation, and for violation of MCL 445.903(1) of the Michigan Consumer Protection Act, MCL 445.901 *et seq.* The parties subsequently stipulated to the dismissal of these claims.

nothing rooted in Catholic or other religious precepts, beliefs or doctrine that governed or dictated its refusal.

The court declined to rule on the defendant's motion under MCR 2.116(C)(10), deeming it "premature" as discovery had just commenced but noting that the defendant had "failed to establish that the PWDCRA does not apply to" its school. The court also denied the plaintiff's bid for a preliminary injunction.

The defendant sought the review of the Court of Appeals, which reversed the circuit court and remanded for entry of summary disposition in the defendant's favor under MCR 2.116(C)(4). *Winkler v Marist Fathers of Detroit, Inc*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2015 (Docket No. 323511). Leaning heavily on *Dlaikan*, the panel agreed with the defendant that "civil courts lack[] subject-matter jurisdiction over [the plaintiff's PWDCRA] claim pursuant to the protections of the First Amendment." Civil courts, the panel reasoned, "have no place analyzing the decision-making process of a religious institution regarding admission," regardless of what reason there may have been for the decision; indeed, said the panel, any such inquiry by a court into the factual basis for the decision would itself "invade[] constitutional protections provided to [the] defendant as a religious institution." Accordingly, the panel concluded that the circuit court erred in believing it could exercise jurisdiction over the plaintiff's claim. In light of this ruling, the panel saw no need to reach whether the PWDCRA applied to religious schools, and declined to reach the other arguments for summary disposition raised by the defendant but not resolved by the trial court in the first instance.

The plaintiff then sought leave to appeal in this Court. We ordered oral argument on whether to grant the application or take other action, directing the parties to address:

4

(1) whether the doctrine of ecclesiastical abstention involves a question of a court's subject matter jurisdiction over a claim, compare *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 616 (2009), with *Dlaikan v Roodbeen*, 206 Mich App 591, 594 (1994); (2) whether the Court of Appeals correctly concluded that consideration of plaintiff's challenge to defendant's admission decision would have impermissibly entangled the trial court "in questions of religious doctrine or ecclesiastical polity," *Dlaikan*, 206 Mich App at 594; and (3) whether this Court should overrule *Dlaikan*, and if so, on what basis. [*Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 888 (2016).]

II

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We likewise review de novo questions of subject matter jurisdiction and constitutional law. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51, 832 NW2d 728 (2013); *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015).

Summary disposition under MCR 2.116(C)(4) is warranted when "[t]he court lacks jurisdiction of the subject matter." As this Court has consistently explained,

> [j]urisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases ; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending ; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [*Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938) (quotation marks and citation omitted).]

See, e.g., *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001) (emphasizing that subject matter jurisdiction "*is not dependent on the particular facts of the case*"); *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998) (explaining that subject matter jurisdiction "is the right of the court to exercise jurisdiction over a class of cases, such as criminal cases"); *Bowie v Arder*, 441 Mich 23,

5

39; 490 NW2d 568 (1992) (rejecting a challenge to the subject matter jurisdiction of the circuit court as "confus[ing] the question whether the court has jurisdiction over a class of cases, namely, child custody disputes, with the question whether a particular plaintiff has a cause of action"); *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990) (quoting caselaw citing *Joy*).

The circuit courts of this state are courts of general jurisdiction, with "original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. See also Const 1963, art 6, § 1; *Campbell*, 434 Mich at 613. "In construing such statutes or constitutional provisions, retention of jurisdiction is presumed and any intent to divest the circuit court of jurisdiction must be clearly and unambiguously stated." *Campbell*, 434 Mich at 614.

## III

There is no dispute that circuit courts possess subject matter jurisdiction over claims of discrimination under the PWDCRA. See MCL 600.605; MCL 37.1606(2). At issue here is whether this general rule holds true for the plaintiff's PWDCRA claim (as the circuit court concluded), or if instead the court lacks such jurisdiction over the claim by virtue of the ecclesiastical abstention doctrine (as the Court of Appeals panel concluded). As noted, the panel's determination was premised largely on the prior Court of Appeals decision in *Dlaikan*, which also sought to apply the ecclesiastical abstention doctrine to a lawsuit challenging a parochial school's admissions decisions. The plaintiffs in that case brought their claims in contract and tort, and the circuit court

6

concluded it had subject matter jurisdiction. The Court of Appeals, however, reversed in a split decision, awarding summary disposition under MCR 2.116(C)(4) to the defendant school. *Dlaikan*, 206 Mich App at 594. Relying on the ecclesiastical abstention doctrine, the *Dlaikan* majority concluded that "the pleadings demonstrate that plaintiffs' claims are so entangled in questions of religious doctrine or ecclesiastical polity that the civil courts lack jurisdiction to hear them." *Id*. The majority reasoned that, under the doctrine, "[w]hen the claim involves the provision of the very services (or as here refusal to provide these services) for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Id*. at 593. Accordingly, the majority continued, "[a] civil court should avoid foray into a 'property dispute' regarding admission to a church's religious or educational activities, the essence of its constitutionally protected function," as "[t]o do so is to set foot on the proverbial slippery slope toward entanglement in matters of doctrine or ecclesiastical polity." *Id*.[2]

The instant panel saw no basis for distinguishing *Dlaikan*, deeming its application of the ecclesiastical abstention doctrine dispositive of whether the circuit court could exercise subject matter jurisdiction over the plaintiff's PWDCRA claim. And *Dlaikan*, for its part, is not alone in characterizing the doctrine as a limitation on the subject matter jurisdiction of civil courts and a proper basis for an award of summary disposition under

---

[2] The dissenting judge in *Dlaikan*, meanwhile, believed the majority had construed the ecclesiastical abstention doctrine much too broadly and would have affirmed the trial court's jurisdictional ruling, as "[d]etermination of the validity of the contract rights asserted by plaintiffs does not require the trial court to stray into questions of religious doctrine or ecclesiastical polity." *Id*. at 603 (TAYLOR, J., dissenting).

MCR 2.116(C)(4). See, e.g., *Hillenbrand v Christ Lutheran Church of Birch Run*, 312 Mich App 273, 275; 877 NW2d 178 (2015); *Pilgrim's Rest Baptist Church v Pearson*, 310 Mich App 318, 323; 872 NW2d 16 (2015).[3] The instant panel's adoption of this same jurisdictional characterization is thus certainly understandable. But the characterization is also inapt. As its origins and operation make clear, the ecclesiastical abstention doctrine informs how civil courts must adjudicate claims involving ecclesiastical questions; it does not deprive those courts of subject matter jurisdiction over such claims.

---

[3] Both the Court of Appeals and this Court have also, at times, described the ecclesiastical abstention doctrine as pertaining to a civil court's "jurisdiction." See, e.g., *Berkaw v Mayflower Congregational Church*, 378 Mich 239, 266; 144 NW2d 444 (1966); *Davis v Scher*, 356 Mich 291, 297; 97 NW2d 137 (1959); *Berry v Bruce*, 317 Mich 490, 503; 27 NW2d 67 (1947); *Borgman v Bultema*, 213 Mich 684, 703; 182 NW 91 (1921); *Attorney General ex rel Ter Vree v Geerlings*, 55 Mich 562, 566-567; 22 NW 89 (1885); *Maciejewski v Breitenbeck*, 162 Mich App 410, 413-414; 413 NW2d 65 (1987); *Wiethoff v St Veronica Sch*, 48 Mich App 163, 166-167; 210 NW2d 208 (1973). This Court has previously cautioned against reading too much into such generic language, and we find that caution well heeded here. See, e.g., *Bowie*, 441 Mich at 39-40 (in rejecting a challenge to the circuit court's subject matter jurisdiction, reiterating this Court's warning against "[t]he loose practice [that] has grown up, even in some opinions, of saying that a court had no 'jurisdiction' to take certain legal action when what is actually meant is that the court had no legal 'right' to take the action, that it was in error"), quoting *Buczkowski v Buczkowski*, 351 Mich 216, 222; 88 NW2d 416 (1958) (quotation marks omitted). We do not see, under the jurisdictional gloss sometimes applied to the ecclesiastical abstention doctrine in prior decisions, a binding determination by this Court that the doctrine may operate to deprive a court of "jurisdiction of the subject matter" such that summary disposition under MCR 2.116(C)(4) would be warranted.

## IV

The ecclesiastical abstention doctrine arises from the Religion Clauses of the First Amendment of the United States Constitution[4] and reflects this Court's longstanding recognition that it would be "inconsistent with complete and untrammeled religious liberty" for civil courts to "enter into a consideration of church doctrine or church discipline," to "inquire into the regularity of the proceedings of church tribunals having cognizance of such matters," or "to determine whether a resolution was passed in accordance with the canon law of the church, except insofar as it may be necessary to do so, in determining whether or not it was the church that acted therein." *Van Vliet v Vander Naald*, 290 Mich 365, 370-371; 287 NW 564 (1939). See also, e.g., *Borgman v Bultema*, 213 Mich 684, 703; 182 NW 91 (1921). Accordingly, "[w]e have consistently held that the court may not substitute its opinion in lieu of that of the authorized tribunals of the church in ecclesiastical matters," *First Protestant Reformed Church v DeWolf*, 344

---

[4] The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." US Const, Am I. "These provisions apply to the states through the Fourteenth Amendment." *Smith v Calvary Christian Church*, 462 Mich 679, 684 n 4; 614 NW2d 590 (2000). They do not, however, "dictate that a State must follow a particular method" when applying the ecclesiastical abstention doctrine to disputes brought in its civil courts, so long as the method does not require from those courts "consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979) (quotation marks and citation omitted).

The Michigan Constitution also contains its own guarantee of religious freedom, see Const 1963, art 1, § 4, which "is at least as protective of religious liberty as the United States Constitution." *People v DeJonge (After Remand)*, 442 Mich 266, 273 n 9; 501 NW2d 127 (1993). The parties have not argued, and precedent does not suggest, that this guarantee adds to or alters the ecclesiastical abstention doctrine required by the First Amendment of the United States Constitution, or itself affects whether the doctrine is properly understood to divest this state's civil courts of subject matter jurisdiction.

Mich 624, 631; 75 NW2d 19 (1956), and that "judicial interference in the purely ecclesiastical affairs of religious organizations is improper." *Berry v Bruce*, 317 Mich 490, 499; 27 NW2d 67 (1947). See, e.g., *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000) ("Under the ecclesiastical abstention doctrine, apparently derived from both First Amendment religion clauses, 'civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity.' "), quoting *Paul v Watchtower Bible & Tract Society*, 819 F2d 875, 878 n 1 (CA 9, 1987). Accord *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979) ("[T]he First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice. As a corollary to this commandment, the Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization.") (citations omitted).

The doctrine thus operates to ensure that, in adjudicating a particular case, a civil court does not infringe the religious freedoms and protections guaranteed under the First Amendment. It does not, however, purport to deprive civil courts of "the right . . . to exercise judicial power over" any given "class of cases." *Joy*, 287 Mich at 253 (quotation marks and citation omitted). The doctrine, for instance, has frequently been invoked and applied in the adjudication of disputes over church property; it has not, however, been understood to categorically preclude a civil court from assuming jurisdiction over such disputes. See, e.g., *Presbyterian Church in the United States v Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 US 440, 449; 89 S Ct 601; 21 L Ed 2d 658 (1969) ("It is obvious . . . that not every civil court decision as to

10

property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property."); *DeWolf*, 344 Mich at 633 ("While courts do not interfere in matters of church doctrine, church discipline, or the regularity of the proceedings of church tribunals, and refuse to interfere with the right of religious groups to worship freely as they choose, the question of the property rights of the members is a matter within the jurisdiction of the courts and may be determined by the court."); *Borgman*, 213 Mich at 703 ("Where . . . a church controversy . . . involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it.") (quotation marks and citation omitted).[5] Likewise, while the doctrine calls for deference to the decisions of "the authorized tribunals of [a religious entity] in ecclesiastical matters," *DeWolf*, 344 Mich at 631, that deference simply

---

[5] Similarly, the United States Supreme Court has confirmed the existence of a "ministerial exception" to federal employment-discrimination laws, which is "grounded in the First Amendment" and which "precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch v EEOC*, 565 US 171, 188; 132 S Ct 694; 181 L Ed 2d 650 (2012). See *id*. at 194-195 (explaining that the exception "ensures that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone") (quotation marks and citation omitted). The Court, however, made clear that this exception does not operate as "a jurisdictional bar" to such employment-discrimination suits "because the issue presented by the exception is whether the allegations the plaintiff makes entitle him to relief, not whether the court has power to hear the case." *Id*. at 195 n 4 (quotation marks, citation, and brackets omitted).

11

requires civil courts to "accept such decisions as final, and as binding on them, in their application to the case before them." *Watson v Jones*, 80 US at 679, 727; 20 L Ed 666 (1871). It does not divest courts of jurisdiction over every claim or case involving such a decision. See *Lamont*, 285 Mich App at 616 (explaining that, under the ecclesiastical abstention doctrine, a civil court retains subject matter jurisdiction over a given matter and, with it, the ability to "enter a judgment" that "resolve[s] the matter consistent with any determinations already made by" the religious entity).

Thus, while some prior decisions such as *Dlaikan* have affixed the label of subject matter jurisdiction to the ecclesiastical abstention doctrine, we agree with the Court of Appeals in *Lamont* that "[t]his characterization is a misnomer," 285 Mich App at 616, and we disavow it. The existence of subject matter jurisdiction turns not on the particular facts of the matter before the court, but on its general legal classification. See *Travelers Ins Co*, 465 Mich at 204; *Goecke*, 457 Mich at 458; *Bowie*, 441 Mich at 39-40; *Campbell*, 434 Mich at 613-614; *Joy*, 287 Mich at 253. By contrast, application of the ecclesiastical abstention doctrine is not determined by reference to the category or class of case the plaintiff has stated. Whether a claim sounds in property, tort, or tax, for instance, is not dispositive. Nor is the fact that the claim is brought against a religious entity, or simply appears to be the sort that "*likely* involves its ecclesiastical policies." *Dlaikan*, 206 Mich App at 593 (emphasis added). What matters instead is whether the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions; if so, the court must abstain from resolving those questions itself, defer to the religious entity's resolution of such questions, and adjudicate the claim accordingly. The doctrine, in short, requires a case-specific inquiry that informs how a court must adjudicate certain

12

claims within its subject matter jurisdiction; it does not determine whether the court has such jurisdiction in the first place. The instant panel thus erred, albeit understandably, in deeming summary disposition warranted under MCR 2.116(C)(4), and we reverse that determination.[6]

V

The defendant, at this point, does not particularly dispute this general understanding of the ecclesiastical abstention doctrine,[7] urging instead that the plaintiff's PWDCRA claim still can't survive under it. According to the defendant, even if a civil court can exercise jurisdiction over the plaintiff's challenge to its admissions decision, the court cannot disrupt that decision or award the plaintiff relief as to it without impermissibly passing judgment on ecclesiastical matters. In support, the defendant

---

[6] Other jurisdictions, it bears noting, have likewise rejected the notion that the ecclesiastical abstention doctrine operates to deprive civil courts of subject matter jurisdiction. See, e.g., *St Joseph Catholic Orphan Society v Edwards*, 449 SW3d 727, 736-737 (Ky, 2014); *Brazauskas v Fort Wayne-South Bend Diocese, Inc*, 796 NE2d 286, 290 (Ind, 2003); *Bryce v Episcopal Church in the Diocese of Colorado*, 289 F3d 648, 654 (CA 10, 2002). A number of these jurisdictions have further clarified that the doctrine operates as an affirmative defense, a characterization consistent with that adopted by the United States Supreme Court as to the "ministerial exception." See *Hosanna-Tabor*, 565 US at 195 n 4. We need not decide here whether we agree with this particular characterization of the doctrine—just that we agree the doctrine does not sound in subject matter jurisdiction.

[7] Although the defendant argued lack of subject matter jurisdiction in the courts below and in its initial response to the instant application, it ultimately conceded in briefing to this Court that "the doctrine of ecclesiastical abstention does not involve a question of a court's subject matter jurisdiction over a claim." Despite the defendant's concession, we have a duty to examine "the limits of [our] authority," *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242; 134 NW2d 146 (1965) (quotation marks and citation omitted), regardless of whether the parties concede it, see *In re Return of Forfeited Goods*, 452 Mich 659, 671; 550 NW2d 782 (1996).

13

suggests an analogy between the students of its high school and the clergy and membership of a church. The defendant stresses that "the action of the church authorities in the deposition of pastors and the expulsion of members is final," *Borgman*, 213 Mich at 703, and that civil courts "cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church," *Watson*, 80 US at 730. See also *Hosanna-Tabor*, 565 US at 184 (recognizing that "[t]he Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own"). A parochial school's admission or expulsion of a student is no different, the defendant maintains, given the "integral part" such a school can play in furthering "the religious mission of the Catholic Church" and in "transmitting the Catholic faith to the next generation." *Lemon v Kurtzman*, 403 US 602, 609, 616; 91 S Ct 2105; 29 L Ed 2d 745 (1971) (quotation marks omitted). A similar line of thinking, it seems, informed the majority's ruling in *Dlaikan*. See *Dlaikan*, 206 Mich App at 593 (citing *Borgman*'s statement regarding the "expulsion of clergy or members" in support of its conclusion that "[a] civil court should avoid foray into a 'property dispute' regarding admission to a church's religious or educational activities, the essence of its constitutionally protected function").

Whether this analogy is generally sound, and whether it holds up in the instant case (or in *Dlaikan*, for that matter), we see no reason to reach at this time. It is for the circuit court, in the first instance, to determine whether and to what extent the adjudication of the legal and factual issues presented by the plaintiff's claim would require the resolution of ecclesiastical questions (and thus deference to any answers the

14

church has provided to those questions).[8]  It is enough for our purposes here to clarify that, contrary to the suggestion of *Dlaikan* and other decisions, the circuit court does, in fact, have subject matter jurisdiction over the plaintiff's claim, and the judicial power to consider it and dispose of it in a manner consistent with the guarantees of the First Amendment.  Simply put, to the extent that application of the ecclesiastical abstention doctrine might still prove fatal to the plaintiff's claim for relief under the PWDCRA, it will not be for lack of "jurisdiction of the subject matter" under MCR 2.116(C)(4).

VI

Accordingly, we reverse the judgment of the Court of Appeals that the defendant is entitled to summary disposition under MCR 2.116(C)(4).  As to the defendant's entitlement to summary disposition under MCR 2.116(C)(10), the Court of Appeals previously declined to reach those arguments on which the circuit court had not yet ruled; we see no reason to disrupt that decision.  The circuit court did, however, reject the defendant's argument that the PWDCRA does not apply to its school, a ruling which the defendant challenged on appeal but which the panel saw no need to review given its

_____

[8] The defendant did not press the analogy discussed above in its motion for summary disposition, and the circuit court did not address it in ruling on that motion.  As noted, however, the court did observe that, while discovery had just commenced, the defendant's "reasons [for its admissions decision] appear[ed] to be . . . secular."  For the reasons discussed, this observation was not necessary to the circuit court's ruling under MCR 2.116(C)(4); the court was correct to conclude it had subject matter jurisdiction over the plaintiff's PWDCRA challenge to the defendant's admissions decision regardless of whether that decision was secular in nature.  Should this matter ultimately return to the circuit court, the defendant remains free, as the record develops, to challenge the accuracy of the court's initial characterization of its decision and to seek application of the ecclesiastical abstention doctrine to the plaintiff's claim.

jurisdictional determination. Having reversed the jurisdictional determination, we remand this matter to the Court of Appeals for consideration of that challenge.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder
